John E. BROGDON,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden of the
Louisiana State Penitentiary, at
Angola, Louisiana, Respondent-Appellee.

No. 85–3451.

United States Court of Appeals,
Fifth Circuit.

May 30, 1986.

Rehearing and Rehearing En Banc
Denied June 27, 1986.

David B. Girard, Bill Quigley, New Orleans, La., Silas Wasserstrom, Washington, D.C., for petitioner-appellant.

Gregory C. Champagne, Asst. Dist. Atty., 29th Judicial Dist., Hahnville, La., William J. Guste, Atty. Gen., New Orleans, La., for respondent-appellee.

Before CLARK, Chief Judge, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Appellant John Brogdon is at Angola State Penitentiary, Louisiana, under sentence of death. Brogdon was to have been executed on August 2, 1985. Two days before his scheduled execution, Brogdon asked this Court for habeas corpus relief. Because insufficient time remained for us to consider his claims properly, we granted a stay of execution.

Upon a careful review of these claims and the record and a critical intervening decision of the United States Supreme Court, we now find that Brogdon raises no ground upon which relief may be granted. We, therefore, deny Brogdon a certificate of probable cause, and we vacate the stay of execution entered in our previous order.

## I.

On the evening of October 7, 1981, Rubeta Brown and her eleven-year old sister, Barbara Jo, walked to a convenience store near their home in Luling, Louisiana, to use the telephone. Nineteen-year old Brogdon and his seventeen-year old friend, Bruce Perritt, arrived at the store while Rubeta was on the phone. Perritt approached Barbara Jo and put his arm around her. Rubeta called her sister away, and the two left. On the way home, Barbara Jo asked her sister if she could visit a neighbor's home for a few minutes. Rubeta allowed her sister to leave her to do so. Rubeta went to the neighbor's house about ten minutes later to pick up Barbara Jo. Barbara Jo, however, was not there. After a short search in the neighborhood, Rubeta informed her mother that Barbara Jo was missing. The Browns then called the sheriff's office.

Soon thereafter, a friend of Barbara Jo's came forward to say that he had seen Barbara Jo earlier that evening in a car seated between Brogdon and Perritt. Two men discovered Barbara Jo's body later that evening behind a levee in Luling. Perritt's car was found parked a short distance away. Two other men later informed authorities that they had seen Brogdon and Perritt walking on the road near this levee. Brogdon was without a shirt and "appeared disheveled." Brogdon and Perritt were arrested that evening at Brogdon's home on suspicion of Barbara Jo's murder.

After being informed of his *Miranda* rights at the sheriff's office, Brogdon waived his right to counsel and confessed to the murder and aggravated rape of Barbara Jo. In his statement, Brogdon told how he and Perritt tortured and killed her. Instead of visiting the neighbor's home that night, Barbara Jo had returned to the convenience store and met with Brogdon and Perritt. The confession admitted that after they picked her up at the convenience store, Brogdon and Perritt drove her to the levee where her body was later found. Here, Brogdon and Perritt repeatedly raped her and forced her to perform oral sex on them. All during the while, the two beat Barbara Jo with their fists. They also broke bottles on the cement and then stabbed her repeatedly with the edges. Perritt also struck Barbara Jo in the head with a brick that he found nearby. Brogdon then beat her with the brick. The two also used pointed sticks to pierce her body. Brogdon and Perritt left the scene of the crime and Perritt's vehicle when they thought a motor vehicle was approaching.

Brogdon was convicted by a St. Charles Parish jury of murder and aggravated rape. He was sentenced to death for his part in the murder.[1] The trial judge entered judgment accordingly on February 16, 1982. The Louisiana Supreme Court affirmed Brogdon's conviction, but reversed his death sentence and remanded

---

1. Perritt was convicted at a separate trial of first-degree murder for his part in this crime. He was sentenced to life imprisonment, however, when the jury in his case was unable to agree upon a sentence.

his case for a new sentencing hearing. *State v. Brogdon*, 426 So.2d 158 (La.1983). After a change of venue, Brogdon was again sentenced to death at the second proceeding. The Louisiana Supreme Court this time affirmed his sentence. *State v. Brogdon*, 457 So.2d 616 (La.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).

Brogdon's execution was scheduled for August 2, 1985. After exhausting all attempts to obtain post-conviction relief in the state courts, Brogdon filed a petition for habeas corpus in the United States District Court for the Eastern District of Louisiana on July 29, 1985. The district court denied Brogdon's petition on July 30, 1985, and also denied Brogdon a certificate of probable cause to appeal to this Court.

Brogdon then asked this Court to stay his execution and to grant him a certificate of probable cause. Brogdon was granted a stay of execution on July 31, 1985, so that his claims would not be mooted before we could review them. We now address each of Brogdon's claims.

## II.

■ Brogdon initially presented 19 claims for relief to the district court. On appeal, he raises only 6 of these before us. In reviewing Brogdon's sentence, we may grant him a certificate of probable cause only if he makes a " 'substantial showing of the denial of [a] federal right.' " *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983), *quoting Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972). A "substantial showing" is one in which a petitioner demonstrates that his "issues are debatable among jurists of reason." *Id.* at n. 4.

### A. *Suppression of Favorable Evidence*

Brogdon's first claim is that evidence favorable to him may have been unlawfully suppressed by the prosecution. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *U.S. v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481

(1985). Brogdon alleges that despite a request by his counsel, the prosecuting authorities did not turn over to him the results of a blood alcohol test they might have conducted.

After police authorities arrested Brogdon on the night of the murder, they drew a blood sample from him with his consent. This sample was tested to determine Brogdon's blood type. Prior to the second sentencing trial, Brogdon's attorney asked the prosecution for the results of any scientific tests conducted on his client. The state's evidence was to the effect that there had been no tests, and no test results were handed over. Brogdon argues that a blood test would have shown that he was intoxicated at the time of the murder. He claims that the jury would not have sentenced him to death if this evidence had been presented to them. Brogdon now asks for an evidentiary hearing to determine whether a blood alcohol test was conducted.

■ The successful establishment of Brogdon's claim requires three findings: (1) the prosecution suppressed evidence; (2) this evidence was favorable to the accused; and (3) the evidence was "material either to guilt or punishment." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196; *Sellers v. Estelle*, 651 F.2d 1074, 1076 (5th Cir.1981), *cert. denied*, 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472. Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, —— U.S. at ——, 105 S.Ct. at 3384; *See also Lindsey v. King*, 769 F.2d 1034, 1041 (5th Cir.1985). We reject Brogdon's claim for failure to establish two of the requirements.

■ First, there is no indication from the record that the prosecution suppressed evidence of a blood alcohol test since there is no evidence that such a test was ever conducted. Ms. Sherry Kirkland, a forensic biologist, tested Brogdon's blood sample to determine his blood type. She testified that she did not conduct a blood alcohol test, nor was she aware if anyone else did.

The state asserts that it has no knowledge of a blood alcohol test being conducted on Brogdon's blood sample. Without some stronger indication this evidence exists, Brogdon's claim must fail. The prosecution has no duty to turn over to the defense evidence that does not exist.

Second, even if a blood test that showed Brogdon was intoxicated existed and was suppressed by the prosecution, it would not be material. Inasmuch as the jury was already aware that Brogdon had been drinking heavily that day, it is unlikely that a blood test confirming this would have altered their recommendation in view of the nature of the crime.

Brogdon had confessed that he and his accomplice, Perritt, had each had six cans of beer shortly before they picked up Barbara Jo Brown. Deputy Sheriff Elvin Folse of St. Charles Parish testified that he found some empty beer cans in the car driven by Brogdon and Perritt. At trial, Nancy Rumage, a psychologist who testified on behalf of Brogdon, told the jury that Brogdon possessed a "borderline personality" that could be spurred into a "psychotic episode" by the slightest disappointment. Such an episode, she explained, was exacerbated by the consumption of alcohol. Ms. Rumage also testified that Brogdon was already an alcoholic at age 14. Dr. Dennis Franklin later testified that because of a personality disorder and mental retardation, Brogdon's ability to function while under the influence of alcohol was lower than that of someone of normal intelligence. Brogdon's attorney also made reference during his closing argument to Brogdon's drinking on the night of the murder. In light of the evidence showing that Brogdon had been drinking heavily on the day of the murder, and of the impact alcohol had upon him, we find that a blood alcohol test showing appellant to be intoxicated could not have been expected to change the jury's recommendation that he be sentenced to death.[2]

## B. *Ineffective Assistance of Counsel*

Brogdon contends that his trial counsel was ineffective. Specifically, Brogdon claims that his counsel was ineffective because he failed to call several witnesses to testify on Brogdon's behalf during the sentencing phase of his trial and also because he failed to investigate the existence of the blood alcohol test discussed above. We find both of these claims without merit.

 To establish his claim, Brogdon must show first, that his counsel's performance was deficient to the point that he did not receive a right to "counsel" as guaranteed by the Sixth Amendment, and second, his counsel's performance was so deficient as to make the sentencing result "unreliable". *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The standard for the first prong of the *Strickland* analysis is an objective one governed by prevailing professional standards of the legal community. *Id.* at 687, 104 S.Ct. at 2065; *Mattheson v. King*, 751 F.2d 1432, 1437 (5th Cir.1985), *cert. dismissed as moot*, — U.S. —, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). Because this analysis must be applied from counsel's perspective during trial and because counsel may pursue his client's defense effectively in different ways, there is a strong presumption that counsel's efforts were professionally reasonable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2065. Our review of the record under this standard indicates Brogdon's claims must fail. Brogdon's counsel was competent and able well above the standard required by *Strickland.*

Brogdon argues that members of his family should have been called as additional witnesses in the sentencing portion of his trial. Affidavits of these potential witnesses show that they would have testified as to the harsh and difficult nature of Brogdon's childhood and to positive attrib-

---

**2.** We note further that because the blood sample was drawn one to two hours after the murder was committed, its probative value would have been questionable. Even if it showed Brogdon was intoxicated, it could not tell how much of his intoxication could have resulted from alcohol consumed after Brogdon and Perritt left the levee.

utes of his personality. Evidence of this kind was amply presented to the jury during the sentencing proceeding by other witnesses called by Brogdon's attorney. This evidence would, therefore, have been merely cumulative. Thus, the decision of Brogdon's attorney not to call these witnesses could well have been a proper exercise of professional judgment. But even assuming, contrary to the record, that counsel's performance on this issue was critically deficient, Brogdon makes no showing that he was prejudiced in any way by the failure to present this cumulative testimony. Without a showing of prejudice, there is no showing that the sentencing result is "unreliable" as required by the second element of the *Strickland* test.

The failure of Brogdon's counsel to pursue further the existence of a blood alcohol test did not constitute ineffective assistance of counsel. Brogdon's counsel did request the results of all scientific tests conducted by the prosecution. The prosecution was bound to turn over any results to him. As the government's evidence was to the effect that there had been no tests and none were turned over, counsel cannot be faulted. Moreover, it was plausible for Brogdon's counsel to believe that there was sufficient other evidence of Brogdon's alcohol consumption that evening so as to render the results of a blood alcohol test superfluous. In any event, there is no showing that Brogdon was prejudiced by counsel's conduct as to the claim Brogdon was intoxicated.

### C. *Lockhart Claim*

 Brogdon argued that Louisiana's practice of excluding prospective jurors from the guilt phase of capital trials because of their conscientious inability to impose the death penalty, under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), makes capital juries conviction prone. This, Brogdon argued, deprived him of his Sixth and Fourteenth Amendment rights to an impartial jury. This claim is foreclosed by the Supreme Court's recent decision in *Lockhart v.*

*McCree*, —— U.S. ——, 106 S.Ct. 1758, 89 L.Ed.2d —— (1986).

### D. *Co-defendant's Sentence*

Brogdon argues that the trial court improperly refused to allow him to introduce as mitigating evidence the fact that Perritt had been sentenced to life imprisonment for his part in the crime. Brogdon contends that this violated his rights under *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In *Lockett*, the Supreme Court invalidated the Ohio death penalty statute because it improperly restricted the kinds of mitigating evidence the defendant could introduce at her sentencing hearing. *Id.* at 604, 98 S.Ct. at 2965. The Supreme Court held that a capital sentencing scheme could not bar as mitigating evidence "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers for a sentence less than death." *Id.*

 *Lockett*, however, does not require a trial court to allow a capital defendant to introduce evidence not relevant to his "character, prior record, or the circumstances of his offense." *Id.* at n. 7. Perritt's life sentence is not relevant to Brogdon's character or offense. This fact is relevant only to the task of comparing the proportionality of Brogdon's sentence to the sentences of others similarly situated, a function assigned by statute in Louisiana to the state Supreme Court. La.Code Crim.Proc. art. 905.9. This evidence was properly excluded.

The Supreme Court's recent decision in *Skipper v. South Carolina*, —— U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), does not alter the law. In *Skipper*, the Supreme Court held that a defendant in a capital crime could not be prevented from introducing evidence showing that he would make a "good adjustment" to prison life. *Skipper*, —— U.S. at ——, 106 S.Ct. at 1672. On its facts, *Skipper* merely reaffirms *Lockett* and evinces no extension of what mitigating evidence a capital defendant may introduce at sentencing.

### E. *Proportionality*

 Brogdon claims that the death penalty is imposed in an arbitrary and capricious manner in Louisiana. Specifically, he challenges his death sentence on two grounds. First, Brogdon alleges that death sentences in Louisiana are imposed in a racially discriminatory manner. He claims that defendants convicted of murdering whites are more likely to be sentenced to death than those convicted of murdering blacks. Brogdon offers to prove this by statistical evidence. Even if we were to accept this evidence as true, Brogdon's claim is without merit inasmuch as it presents no evidence of discriminatory intent in the imposition of the death penalty in Louisiana. *Prejean v. Maggio*, 765 F.2d 482, 486 (5th Cir.1985), *modifying*, 743 F.2d 1091 (1984), *cert. pending*, No. 85–5609.

Brogdon also claims that the Louisiana Supreme Court's proportionality review of death sentences is improper. Specifically, he alleges his sentence is disproportionate in view of Perritt's life sentence for the same crime. Brogdon also challenges broadly the comparative review of death sentences conducted by the Louisiana Supreme Court.

 A state need not even undertake any sort of proportionality review of death sentences so long as the underlying sentencing scheme minimizes arbitrary and capricious sentencing. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Mattheson*, 751 F.2d at 1446. Louisiana, nevertheless, has provided Brogdon with such a review in spite of his conviction for a particularly heinous crime. Previous decisions of this Court have upheld this review from constitutional attack. *Prejean*, 765 F.2d at 484; *Williams v. Maggio*, 679 F.2d 381, 394 (5th Cir.1982) (en banc), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). The fact that Brogdon's codefendant received a life sentence instead of a death sentence failed to present a constitutional challenge in this case. Sentencing hearings in capital cases focus not only upon the circumstances of the underlying crime, but also upon the personal attributes of each of the defendants. Brogdon's challenge on this issue fails.

### F. *Denial of Evidentiary Hearing*

 Brogdon's final claim is that the district court improperly denied him an evidentiary hearing as he asserts is required by *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). There is no such automatic requirement of a hearing. There were no factual determinations that needed to be resolved. Brogdon was afforded an adequate opportunity to develop his claims. We affirm the district court's judgment on this issue as well.

### III.

Appellant's motion to proceed in forma pauperis is granted. His application for a certificate of probable cause is denied. Our stay of execution granted appellant on July 31, 1985, is vacated.

STAY VACATED AND APPEAL DISMISSED.