**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-20724

KENNETH WAYNE MORRIS,

Petitioner-Appellant,

VERSUS

JANIE COCKRELL,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas, Houston Division
4:00-CV-1286

April 18, 2002

Before DeMOSS, PARKER, and DENNIS, Circuit Judges

PER CURIAM: [*]

Petitioner Morris, a Texas state death penalty inmate, requests a certificate of appealability ("COA") under 28 U.S.C. § 2253, *et seq.*, on three issues. First, whether the Texas appellate

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

court's refusal to review the trial jury's determination of the sufficiency of mitigating evidence when selecting Morris for imposition of the death penalty violated constitutional due process. Second, whether the Texas trial court violated due process by refusing to admit evidence of Morris's co-defendants' lesser sentences as mitigation evidence. Third, whether the dismissal of venireperson Dreannon constituted error under *Batson v. Kentucky*, 476 U.S. 79 (1986). We deny Morris's request on each issue.

## I. BACKGROUND.

During the early morning hours of May 1, 1991, Morris shot 63-year-old James Moody Adams four times, killing Adams, during a violent, home-invasion style burglary. Morris and two accomplices kicked in the door of the Adams' home in Harris County, Texas, looking for guns and money. The noise of their entrance awakened Adams and his wife. While his wife waited in the locked bedroom, Adams went to investigate the noise. When Morris encountered Adams in the house, Morris held a gun on Adams while an accomplice ordered Adams to produce guns and money. Adams stated that he had no guns, but that he would give them what money he had. The intruders kicked down the door leading to the master bedroom and forced Adams inside. When she heard the door giving way, Mrs. Adams hid in the bedroom closet because she had no route of escape from the bedroom. Adams retrieved his wallet from his bedroom

closet and gave it to Morris. Mrs. Adams, hiding in this same bedroom closet, heard the intruders exclaim angrily that there was no money in the wallet. She heard Adams respond, "I'll get you some." Adams then removed his money from a hidden part of the wallet and gave it to Morris. Having the money in hand, Morris shot Adams. Mrs. Adams heard her husband exclaim, "Oh no!" and then heard four gunshots in rapid succession. The first two shots entered and exited Adams's face and neck. The final two shots were to his back as he lay on the bedroom floor. Adams fell dead in his bedroom closet at his wife's feet, and she heard him stop breathing. The intruders fled the scene, leaving behind trash bags that they brought to the house to carry off stolen property. Mrs. Adams, unsure if the intruders were gone but too terrified to stay hidden, stepped over her husband's body and fled the house through the splintered front door.

A fingerprint lifted from one of the abandoned trash bags led to the arrest of one of the intruders, Christopher Montez. Morris was arrested in Brenham, Texas, on May 13, 1991. He made an oral and then a written statement the night that he was arrested, confessing to the murder of James Adams. The written statement was introduced at trial. Police also recovered the murder weapon, a .32 caliber revolver.

Morris's trial was conducted before the 339th District Court of Harris County in December, 1993. The jury found Morris guilty of capital murder. During the punishment phase of Morris's trial,

the state reintroduced all evidence introduced during the guilt phase. The state also introduced stipulated evidence of Morris's criminal record. Morris presented character and psychiatric testimony in mitigation during the punishment phase, including his mother's testimony of environmental factors affecting Morris during childhood, two psychiatric experts, and a criminologist. Despite his mitigating evidence, the jury answered the special issues presented to them in favor of the death penalty and the court sentenced Morris to death.

The conviction was upheld on direct appeal. *See Morris v. State*, 940 S.W.2d 610 (Tex. Crim. App. 1997). On Morris's state *habeas* petition, the trial court issued findings of fact and conclusions of law recommending that *habeas* relief be denied, including on each of the issues presented to us. The Court of Criminal Appeals adopted the trial court's findings and denied relief. Morris then applied to the United States District Court for the Southern District of Texas for federal *habeas* relief, which was denied. Pursuant to 28 U.S.C. § 2253(c), which provides that a litigant may not appeal the denial of a petition for *habeas corpus* without first obtaining a COA from a circuit judge, Morris now requests a COA from us.

## II. STANDARD OF REVIEW.

To prevail on an application for a COA, a petitioner must make a "substantial showing of the denial of a constitutional right, a

4

demonstration that . . . includes showing that reasonable jurists could debate whether. . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Moore v. Johnson*, 225 F.3d 495, 500 (5th Cir. 2000), quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

In assessing whether a petitioner has demonstrated a substantial showing of the denial of a constitutional right, we must keep in mind the deference scheme laid out in 28 U.S.C. § 2254(d). *See Moore*, 225 F.3d at 501.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under that scheme, we review pure questions of law and mixed questions of law and fact under § 2254(d)(1) and review questions of fact under § 2254(d)(2). *See* 225 F.3d at 501.

"Because the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

**III. ANALYSIS.**

5

Morris first argues that the Texas appellate court's refusal to review the jury's determination of whether special mitigating factors existed to sentence a criminal otherwise fully qualified for death instead to life in prison, is a violation of due process. *See Morris v. State*, 940 S.W.2d 610, 614 (Tex. Crim. App. 1996). This is precisely the issue we answered in *Moore v. Johnson* as a pure question of law. *See Moore*, 225 F.3d at 505.

A capital murder trial in Texas proceeds in a bifurcated process. In the first, or "guilt-innocence," phase, a defendant's eligibility for consideration of the death penalty is determined. Once that eligibility is determined, the trial proceeds to the second, or "punishment," phase, wherein the defendant is either selected for death or for the alternative sentence of life imprisonment. In that phase, the state presents the jury with evidence of certain aggravating factors, including in Morris's case whether he deliberately caused Adams's death and whether Morris would be a continuing threat to society. The defendant also presents the jury with mitigating evidence, which in Morris's case included, *inter alia*, the testimony of his mother, the psychiatrists, and the criminologist. The jury is then asked to determine whether the aggravating factors have been shown beyond a reasonable doubt, thus qualifying the defendant for selection for the death penalty. If so, the jury is then asked whether the defendant's mitigating evidence is sufficient to warrant the

6

imposition of a life sentence rather than the death penalty.  The

Texas Court of Criminal Appeals has explained that:

> [i]n Texas, this mitigating evidence is admissible at the punishment phase of a capital murder trial.  Once admitted, the jury may then give it weight, if in their individual minds it is appropriate, when answering the questions which determine sentence.  However, "[t]he amount of weight that the factfinder might give any particular piece of mitigating evidence is left to 'the range of judgment and discretion' exercised by each juror."

*See Colella v. State*, 915 S.W.2d 834, 844 (Tex. Crim. App.

1995)(quoting *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App.

1994); *Johnson v. State*, 773 S.W.2d 322, 331 (Tex. Crim. App.

1989), *aff'd*, *Johnson v. Texas*, 509 U.S. 350 (1993)).  No burden of

proof exists for either the state or the defendant to disprove or

prove the mitigating evidence.  *Colella*, 915 S.W.2d at 844.  Thus,

each juror individually and subjectively determines what evidence,

if any, is sufficient to mitigate against the imposition of the

death penalty.

The Texas Court of Criminal Appeals has consistently refused

to review such a subjective determination on the part of individual

jurors.  *See Colella*, 915 S.W.2d at 845 ("[b]ecause the weighing of

'mitigating evidence' is a subjective determination undertaken by

each individual juror, we decline to review the evidence for

sufficiency").

We held in *Moore* that Texas is within the ambit of federal law

as interpreted by the United States Supreme Court.  *See Moore*, 225

F.3d at 507.  We did so in view of *Tuilaepa v. California*, 512 U.S. 967 (1994), in which the Supreme Court distinguished between a jury's "eligibility decision" and its "selection decision."  It is the eligibility decision that must be made with maximum transparency to "make rationally reviewable the process for imposing a sentence of death."  *Moore*, 225 F.3d at 506 (quoting *Tuilaepa*, 512 U.S. at 973).  On the other hand, a jury is free to consider a "myriad of factors to determine whether death is the appropriate punishment.  Indeed, the sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty."  225 F.3d at 506 (quoting 512 U.S. at 979-80).  It is the jury's subjective and "narrowly cabined but unbridled discretion to consider any mitigating factors," 225 F.3d at 507, that Texas refrains from independently reviewing.  We held then, as we do now, that Texas may correctly do so.

Morris argues that the Supreme Court's rulings in *Clemons v. Mississippi*, 494 U.S. 738 (1990), *Parker v. Dugger*, 498 U.S. 308 (1991), and *Zant v. Stephens*, 462 U.S. 862 (1983), among others, militate toward a requirement to review jurors' subjective determinations in weighing mitigating evidence.  We disagree. Those cases reinforce the Court's emphasis on "meaningful appellate review of death sentences to promote reliability and consistency,"

8

*Clemons*, 494 U.S. at 749, to "ensur[e] that the death penalty is not imposed arbitrarily or irrationally," *Parker*, 498 U.S. at 321. Morris has made no showing of unreliability in Texas's method of selecting defendants for the imposition of the death penalty and Texas has been nothing if not consistent in its refusal to reweigh mitigating evidence on appellate review.

Morris's reliance on the Court's language in *Clemons* that "[w]e see no reason to believe that careful appellate weighing of aggravating against mitigation circumstances in cases such as this would not produce 'measured consistent application' of the death penalty or in any way be unfair to the defendant" is misplaced. *See Clemons*, 494 U.S. at 748. Rather than imposing such an appellate review requirement, as Morris suggests, the Court merely held that such review was permissible in a situation where a death sentence had been based in part on an invalid or improperly defined aggravating circumstance. We decline to read *Clemons* as Morris propounds. We instead reiterate our previous holding on this issue in *Moore* and rule that Morris has not made a substantial showing of the denial of a constitutional right.

Next, Morris asserts that the trial court violated due process by refusing to admit evidence of Morris's co-defendants' lesser sentences as mitigation evidence. To advance his position, Morris insists that he "was entitled under *Lockett v. Ohio*, 438 U.S. 586 (1978) to offer the jury this mitigating evidence." *See*

9

Application for COA at 11.  He makes no effort to explain or substantiate this otherwise-bare assertion, however, while conceding that the case law of this circuit has held exactly the opposite.  *Brogdon v. Blackburn*, 790 F.2d 1164 (5th Cir. 1986).

The Supreme Court has established that a "jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime."  *See Penry v. Lynaugh*, 492 U.S. 302, 328 (1989).  Further, the Court has established that evidence that is not relevant to the defendant's character, prior record, or the circumstances of his offense may properly be excluded from evidence.  *See Lockett*, 438 U.S. at 604 n.12; *see also Skipper v. South Carolina*, 476 U.S. 1, 7 n.2 (1986)(not all facets of a defendant's ability to adjust to prison life, such as how often he will take a shower, are relevant to the sentencing determination).

On this foundation, we reiterate our holding in *Brogdon*, that the sentences imposed on the co-defendants of a capital crime defendant are not constitutionally relevant mitigating evidence to include in the determinations of the jurors.  Morris has offered absolutely nothing in contradiction and so we again rule that Morris has not made a substantial showing of the denial of a constitutional right.

Finally, Morris contends that the dismissal of venireperson Dreannon constituted error under *Batson v. Kentucky*, *supra*.  This

10

contention is based on (1) Mr. Dreannon being black and (2) that Mr. Dreannon indicated on his jury questionnaire that he was strongly in favor of the death penalty. Following voir dire, the prosecutor peremptorily struck Mr. Dreannon. Morris claims that this establishes a *prima facie Batson* case.

Under *Batson*, to prove that the prosecutor has impermissibly used the power to peremptorily strike jurors, (1) the petitioner must make a *prima facie* showing that the prosecutor exercised his peremptory strikes on the basis of race; (2) the burden of production then shifts to the prosecutor to articulate a race-neutral reason for challenging the venire member; and (3) finally, the trial court must decide whether the petitioner has sustained his burden of proving purposeful discrimination. *Soria v. Johnson*, 207 F.3d 232, 237 (5th Cir. 2000). It is unclear whether Morris had established a *prima facie* case in the Texas trial court. That court did, however, conduct a *Batson* hearing wherein the prosecutor explained that he was uncomfortable with Mr. Dreannon's ability to impose the death penalty on a defendant of Morris's age, which was close to Mr. Dreannon's son's age. Mr. Dreannon's answers on this issue were equivocal, evasive and ultimately unresponsive. The trial judge's observations during voir dire were consistent with the prosecutor's and she further noted that the same prosecutor had seated several black jurors in a separate but recent capital punishment trial. On those bases, the trial judge held that Morris

11

had not sustained the burden of proving purposeful discrimination. *See Morris v. Texas*, 940 S.W.2d at 612 (affirming the trial court).

Morris has adduced nothing additional to substantially show the denial of a constitutional right. The federal district court, reviewing Morris's federal *habeas* petition, noted that Morris's allegation is not that his rights were violated, but instead that the trial court committed reversible error. The district court stated that such a claim is not a basis for a federal *habeas* petition nor is it the role of a federal district court to sit in appellate review of a state trial court. We agree with the district court's assessment. Further, because such a determination in the state court was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, we would be unable to grant a COA in any case.

## IV. CONCLUSION.

For the reasons stated herein, we deny Morris's request for a COA on each of his three issues.