Steven Keith HATCH, Petitioner–
Appellant,

v.

STATE of Oklahoma, Respondent–
Appellee.

No. 94–6052.

United States Court of Appeals,
Tenth Circuit.

June 14, 1995.

Thomas M. Lahiff, Jr., New York City, for appellant.

A. Diane Blalock, Asst. Atty. Gen. for State of Okl., Oklahoma City, OK (Susan Brimer Loving, Atty. Gen. of Oklahoma, and Sandra D. Howard, Asst. Atty. Gen., Chief, Crim. Div., with her on the brief), for appellee.

Before TACHA, BALDOCK, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Petitioner Steven Keith Hatch was convicted of two counts of first degree murder in Oklahoma state court. Oklahoma courts twice sentenced him to death and then vacated those sentences.[1] After a third state court judge imposed the death penalty on petitioner, the Oklahoma Court of Criminal Appeals affirmed. Petitioner then sought a writ of habeas corpus in federal district court. After first referring the case to a magistrate judge, the district court denied the petition. Petitioner now appeals, alleging seventeen errors: Sixteen of his claims concern constitutional infirmities in his state court proceedings, and one contends that the federal district court erred in failing to conduct an evidentiary hearing on his habeas claims. We have jurisdiction pursuant to 28 U.S.C. § 2253 and affirm.

## I. BACKGROUND

On October 15, 1979, petitioner and his accomplice, Glen Burton Ake, approached a home in Canadian County, Oklahoma, intending to rob its residents. Ake entered the home under the pretense that he was lost and needed directions. After excusing himself to return briefly to the car, Ake reentered the house with a firearm. Petitioner entered the house as well, also holding a firearm.

Once inside, petitioner and Ake bound and gagged three of the occupants: Reverend Richard Douglass, his wife, Marilyn, and their son, Brooks. They ransacked the house, stealing numerous items. They also attempted to rape twelve-year-old Leslie Douglass, Richard and Marilyn's daughter.

Petitioner covered each of the Douglasses' heads with an article of clothing. Ake told petitioner to return to the car, turn it around, and "wait for the sound." After petitioner left the house, Ake shot Richard and Leslie twice and Marilyn and Brooks once. Marilyn died from the gunshot wound, while Richard died from the combination of gunshot wounds and strangulation. The two children survived.

After this episode, petitioner and Ake left Oklahoma but continued their crime spree. When they learned that the Douglass children had survived, petitioner suggested that they return to Oklahoma and kill them so that there would be no witnesses to the murders. Although petitioner and Ake abandoned this plan, they later journeyed toward Oklahoma City intending to kill the children. They again decided not to follow through. Authorities ultimately apprehended petitioner and Mr. Ake in Colorado.

Petitioner's tortuous trip through the justice system began soon after he and Ake were arrested. Petitioner waived his right to trial by jury. He was tried in the District Court of Canadian County, Oklahoma, by Judge Floyd Martin. Judge Martin found petitioner guilty of two counts of first degree murder and two counts of shooting with intent to kill. After petitioner's sentencing hearing, Judge Martin found three aggravating circumstances: (1) the murders were especially heinous, atrocious or cruel; (2) petitioner committed the murders to avoid lawful arrest or prosecution; and (3) a probability existed "that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." The judge therefore imposed on petitioner two sentences of death for his murder convictions, as well as two terms of forty-five years in prison for his other convictions.

Subsequent to petitioner's convictions but prior to his direct appeal, the United States

---

1. Each time a state court sentenced petitioner, it sentenced him to two death penalties—one for each count of first degree murder. For the purposes of this opinion, however, we will refer to them only as "the death penalty."

Supreme Court decided *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). *Enmund* held that the Eighth Amendment prohibited the imposition of the death penalty on any person who did not "himself kill, attempt to kill, or intend that a killing take place or that lethal force ... be employed." *Id.* at 797, 102 S.Ct. at 3376; *see also Andrews v. Shulsen,* 802 F.2d 1256, 1272 (10th Cir.1986), *cert. denied,* 485 U.S. 919, 108 S.Ct. 1091, 99 L.Ed.2d 253 (1988).

On petitioner's direct appeal, the Oklahoma Court of Criminal Appeals reviewed petitioner's death sentence in light of *Enmund. Hatch v. Oklahoma,* 662 P.2d 1377 (Okla.Crim.App.1983) (*Hatch I*). The court determined that "it [was] necessary for the sentencer to give greater attention to the evidence concerning [petitioner's] individual participation and intent in the events which culminated in the murder/shootings." *Id.* at 1383. It therefore vacated petitioner's death sentence and remanded the case to the district court "for resentencing not inconsistent with *Enmund v. Florida* and [its] opinion" in *Hatch I. Id.* (citation omitted).

By the time of the remand, Judge Martin, who presided over petitioner's first trial, had died. He was replaced by Judge Stan Chatman. Judge Chatman initially ruled that he lacked authority to resentence plaintiff to death because of Okla.Stat.Ann. tit. 21, § 701.13(E) (West 1983) (amended 1985). In response to Judge Chatman's ruling, the state sought a writ of mandamus to compel Judge Chatman to conduct a new sentencing hearing. The Oklahoma Court of Criminal Appeals granted the writ and directed Judge Chatman to "conduct a new sentencing proceeding in accordance with 21 O.S.1981, § 701.10 and the directive of [*Hatch I*], and make findings of fact and conclusions of law." *Oklahoma v. Chatman,* 671 P.2d 56, 57 (Okla. Crim.App.1983) (citation omitted).

On resentencing, Judge Chatman found the same three aggravating circumstances that Judge Martin had found. He also noted that the aggravating circumstances outweighed the mitigating circumstances. In addressing petitioner's individual culpability under *Enmund,* Judge Chatman stated that "[t]he evidence is supportive ... of a finding that [petitioner] contemplated that a killing was not only possible, but probable, and further that lethal force would probably be employed." Based on these findings, Judge Chatman sentenced petitioner to death for both of the murders.

Petitioner appealed his sentences, asserting two claims. First, he contended that Judge Chatman lacked authority to resentence him under Okla.Stat.Ann. tit. 21, § 701.13 (West 1983) (amended 1985). Second, he argued that the evidence did not justify a sentence of death. The Oklahoma Court of Criminal Appeals rejected petitioner's arguments and affirmed his death sentences. *Hatch v. Oklahoma,* 701 P.2d 1039, 1040 (Okla.Crim.App.1985) (*Hatch II*). The United States Supreme Court denied certiorari. *Hatch v. Oklahoma,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).

Petitioner then filed a petition for a writ of habeas corpus in federal district court. The district court dismissed the petition. Petitioner appealed, and this court ordered that his appeal be held in abeyance pending petitioner's exhaustion of his claims in state court.

Petitioner then applied for state post-conviction relief in the District Court of Canadian County. Judge Joe Cannon ruled that Judge Chatman should have recused himself from petitioner's second sentencing proceeding because Judge Chatman had worked for the prosecuting attorney during petitioner's trial and his first sentencing proceeding. Judge Cannon therefore vacated petitioner's death sentences and planned a third sentencing hearing. After petitioner unsuccessfully attempted to stay his resentencing, Judge Cannon sentenced petitioner to death once more. The Oklahoma Court of Criminal Appeals affirmed. *Hatch v. Oklahoma,* 835 P.2d 880, 884 (Okla.Crim.App.1992) (*Hatch III*).

Petitioner again turned to federal court seeking a writ of habeas corpus. In his petition he asserted seventeen grounds for relief and requested an evidentiary hearing. The district court referred the petition to a magistrate judge, who found no meritorious grounds for granting the writ. The district

court, without holding an evidentiary hearing, reviewed the petition and the magistrate's findings de novo and likewise determined that petitioner's claims were meritless. Petitioner now appeals to this court.

## II. PRELIMINARY ISSUES

■ Before turning to the merits, we must demarcate the scope of our review. "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983); *see also Autry v. Estelle*, 464 U.S. 1, 3, 104 S.Ct. 20, 22, 78 L.Ed.2d 1 (1983) (per curiam). Although we review legal conclusions de novo, *Brewer v. Reynolds*, 51 F.3d 1519, 1522–23 (10th Cir.1995), a state court's factual findings are entitled to a presumption of correctness, 28 U.S.C. § 2254(d); *Lujan v. Tansy*, 2 F.3d 1031, 1034 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1074, 127 L.Ed.2d 392 (1994). In other words, "[a] federal court may not overturn such [factual] determinations unless it concludes that they are 'not fairly supported by the record.'" *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (per curiam) (quoting 28 U.S.C. § 2254(d)(8)). We review mixed questions of law and fact de novo. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 1972, 131 L.Ed.2d 861 (U.S.1995); *Brecheen v. Reynolds*, 41 F.3d 1343, 1365–66 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995).

■ We must also note what issues this case does *not* present. The state has not claimed that any legal ruling requested by petitioner would amount to a "new rule" that could not be applied retroactively in habeas proceedings. *See Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) (plurality opinion). The state has therefore waived that argument. *See Schiro v. Farley,* —— U.S. ——, ——, 114 S.Ct. 783, 788–89, 127 L.Ed.2d 47 (1994); *Godinez v. Moran,* —— U.S. ——, —— n. 8, 113 S.Ct.

2680, 2685 n. 8, 125 L.Ed.2d 321 (1993). The state has also failed to assert that a procedural bar would prohibit this court from reviewing the merits of any issue raised by petitioner. *Cf. Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991) (holding that when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice"). Although a federal court may raise the state procedural bar defense sua sponte, it is not required to do so, *see Manlove v. Tansy*, 981 F.2d 473, 476 n. 4 (10th Cir.1992), and we decline to do so here, *cf. Mansfield v. Champion*, 992 F.2d 1098, 1099 n. 2 (10th Cir.1993) (refusing to examine procedural bar sua sponte); *Hardiman v. Reynolds*, 971 F.2d 500, 505 (10th Cir.1992).

Finally, we will only examine claims made by petitioner that relate to the innocence/guilt phase of his trial, his appeal, or his third sentencing hearing. While petitioner alleges two errors in his first sentencing hearing,[2] we agree with petitioner that his current death sentence is the result of Judge Cannon's decision at the third sentencing hearing, which fully reweighed the aggravating and mitigating circumstances surrounding the murders and evaluated petitioner's personal culpability under *Enmund.* Any error stemming from petitioner's first sentencing hearing is therefore irrelevant to this appeal.

## III. THE INNOCENCE/GUILT PHASE

### A.

■ Petitioner claims that, at the innocence/guilt phase of the trial, the court should have considered whether he committed a noncapital offense. He bases his argument on *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In *Beck,*

---

2. Petitioner's two allegations of error are that the sentencing judge impermissibly used religion as

a basis for imposing the death penalty, and that the sentencing judge was biased.

the petitioner claimed that, although he had participated in robbing the victim, his accomplice had committed the murder. *Id.* at 629–30, 100 S.Ct. at 2385–87. Under Alabama law, a defendant committed a capital offense if he robbed or attempted to rob and "the victim [was] intentionally killed by the defendant." *Id.* at 627, 100 S.Ct. at 2384. Felony murder, however, was a lesser included offense that was not punishable by death in Alabama. *Id.* at 628, 100 S.Ct. at 2384–85. Despite the petitioner's claim that he had only committed the offense of noncapital felony murder, Alabama law prohibited the court from issuing a noncapital murder instruction. *Id.* The jury thus was left with the choice of either convicting the petitioner of the capital offense (which carried with it an automatic advisory jury sentence of death) or acquitting him. *Id.* at 629, 100 S.Ct. at 2385–86.

The Supreme Court held that this statutory scheme was unconstitutional. *Id.* at 629, 100 S.Ct. at 2385–86. As the Court later clarified in *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), "the jury must be permitted to consider a verdict of guilt of a noncapital offense 'in every case' in which 'the evidence would have supported such a verdict.'" *Id.* at 610, 102 S.Ct. at 2052.

In this case, petitioner was convicted of first degree murder under Okla.Stat.Ann. tit. 21, § 701.7(B) (West Supp.1982) (amended 1989). That section stated that "[a] person ... commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary or first degree arson." *Id.* The lesser included offense of first degree murder—second degree murder—is "perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in [section 701.7(B) ]." *Id.* § 701.8(2).[3]

Petitioner has never denied that he committed robbery with a dangerous weapon as defined by Okla.Stat.Ann. tit. 21, § 801 (West 1983). Once the state has established that a defendant used a dangerous weapon in the course of a robbery that results in death, the offense of second degree murder is no longer an option under Oklahoma law. *See Foster v. Oklahoma,* 714 P.2d 1031, 1039 (Okla.Crim.App.) ("Robbery, the predicate felony in second degree felony murder, cannot be accomplished with a dangerous weapon."), *cert. denied,* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). Under those circumstances, the defendant has committed robbery with a dangerous weapon and first degree felony murder. *Id.* Because petitioner committed the underlying offense to first degree felony murder, there is not "evidence, which, if believed, could reasonably have led to a verdict of guilt of a lesser offense." *Hopper,* 456 U.S. at 610, 102 S.Ct. at 2052.

Petitioner nevertheless claims that the absence of a lesser included offense option in Oklahoma law is unconstitutional. We do not read *Beck* or any other case as establishing a constitutional requirement that states create a noncapital murder offense for every set of facts under which a murder may be committed. Instead, *Beck* and *Hopper* establish that consideration of a lesser included offense as defined by state law is constitutionally required *when the evidence warrants it. See Parks v. Brown,* 840 F.2d 1496, 1500–01 (10th Cir.1987), *rev'd on other grounds,* 860 F.2d 1545 (1988) (10th Cir.) (en banc), *rev'd on other grounds sub nom. Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). We therefore find no constitutional violation in the state court's refusal to consider whether petitioner had committed second degree murder.

**B.**

State-appointed counsel represented petitioner at the innocence/guilt phase of his

---

3. A second type of second degree murder, which is based on "depraved mind," *see* Okla.Stat.Ann. tit. 21, § 701.8(1) (West 1983), is not a lesser-included offense of felony murder in Oklahoma. *Franks v. Alford,* 820 F.2d 345, 347 (10th Cir.

1987) (" '[D]epraved mind' murder is not a lesser included offense of felony murder because it requires proof of a mental state that felony murder does not.").

trial. While the Oklahoma state trial court appointed one attorney to assist petitioner, it appointed two attorneys as counsel for his codefendant, Mr. Ake. The court also refused to appoint an investigator for petitioner, although one would have been available to him had he been tried in a more populous county. *See* Okla.Stat.Ann. tit. 19, § 138.6 (West Supp.1988). Petitioner does not allege that he was substantively entitled either to two attorneys or to an investigator. Rather, he claims that providing these benefits to some defendants while denying them from him violates his rights to equal protection under the Fourteenth Amendment.

■ As a threshold matter, we must determine what level of equal protection scrutiny to apply in assessing the challenged state action. "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (footnote omitted); *see also Stephens v. Thomas,* 19 F.3d 498, 501 (10th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 516, 130 L.Ed.2d 422 (1994). Petitioner does not claim that he is a member of a suspect class. *Cf. Williams v. Lynaugh,* 814 F.2d 205, 208 (5th Cir.) (capital defendants are not a suspect class), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987). Thus, if we are to apply strict scrutiny, the challenged state action must implicate a fundamental right.

Petitioner contends that Oklahoma's discrepant treatment of criminal defendants with respect to the appointment of investigators and attorneys impinges on his right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (describing "the fundamental constitutional right of access to the courts"); *Carper v. Deland,* 54 F.3d 613, 616 (10th Cir.1995) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts.") (internal quotation marks omitted); *Petrick v. Maynard,* 11 F.3d 991, 994 (10th Cir.1993) ("The

Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to adequate, effective, and meaningful access to the courts.") (internal quotation marks omitted); *Tubwell v. Griffith,* 742 F.2d 250, 252 (5th Cir.1984) ("It is well-established that access to the courts is a fundamental constitutional right."). For support, petitioner cites *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). In *Griffin,* two indigent criminal defendants asked an Illinois state court to provide them with transcripts of their trial proceedings free of cost. *Id.* at 13, 76 S.Ct. at 588. Under Illinois law, the state paid for transcripts only in capital cases; the court therefore denied their request. The Supreme Court ruled that the state's refusal to provide indigent defendants with trial transcripts deprived them of adequate appellate review. *Id.* at 18, 76 S.Ct. at 590. Because the Illinois court system gave meaningful appellate review to those defendants who could afford transcripts but not to those who could not, the state scheme violated the right of indigent defendants to equal protection. *Id.* at 20, 76 S.Ct. at 591; *see also Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963) (holding that when a state does not provide indigent defendants with counsel on direct appeal, "an unconstitutional line has been drawn between rich and poor").

The Court's decisions in *Griffin* and *Douglas,* however, rested on the Due Process Clause as well as the Equal Protection Clause. *See Evitts v. Lucey,* 469 U.S. 387, 404, 105 S.Ct. 830, 840, 83 L.Ed.2d 821 (1985) (commenting that the denial of free transcripts at issue in *Griffin* "violated due process principles because it decided the appeal in a way that was arbitrary with respect to the issues involved"); *Ross v. Moffitt,* 417 U.S. 600, 608–09, 94 S.Ct. 2437, 2442–43, 41 L.Ed.2d 341 (1974) ("The precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment."); *Dickerson v. Latessa,* 872 F.2d 1116, 1120 (1st Cir.1989) (stating that *Griffin* and *Douglas* "appear not only to

implicate equal protection concerns but also due process safeguards as well"). In contrast, the infirmities alleged by petitioner in this case do not implicate any due process protections. Petitioner does not claim that he was entitled to more than one attorney, nor does he assert that the assistance of an investigator is necessary to ensure meaningful access to the courts. *Cf. Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2636–37 n. 1, 86 L.Ed.2d 231 (1985) (no need to address claim of need for investigator "[g]iven that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial"). Consequently, the state action challenged by petitioner does not infringe on his fundamental right of access to the courts. Strict scrutiny is inappropriate.

We will therefore apply the rational basis test. Under the rational basis test, the challenged classifications "bear[s] a strong presumption of validity." *FCC v. Beach Communications, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993). We must therefore uphold the challenged policies "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at ——, 113 S.Ct. at 2101.

At the time of petitioner's trial, Oklahoma law allowed "[t]he district judges of a county [of more than 200,000 persons to] authorize the employment of ... one or more investigators for the office of public defender." Okla.Stat.Ann. tit. 19, § 138.6 (West Supp. 1988) (amended 1991 and 1994). In *Eddings v. Oklahoma*, 616 P.2d 1159 (Okla.Crim.App. 1980), *rev'd on other grounds*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the Oklahoma Court of Criminal Appeals held that this provision did not violate equal protection principles. *Id.* at 1164. The court found a rational basis in the state's decision to staff investigators only in counties of over 200,000 persons "since the larger counties undoubt-

edly have greater numbers of indigent defendants." *Id.* We agree. The Oklahoma legislature could have rationally concluded that hiring investigators only in its largest counties was a sounder and more efficient use of the state's resources. Under these circumstances, we therefore find no equal protection violation in Oklahoma's denying petitioner the assistance of an investigator.

Petitioner's second equal protection claim—that it was unconstitutional for the state to assign him only one attorney while his codefendant Ake received the assistance of two—also fails. In his brief, petitioner acknowledges that the judge assigned two attorneys to Ake because the judge believed that Ake was more culpable and therefore needed additional assistance. We find the judge's asserted justification for the discrepancy perfectly legitimate and rational. We therefore hold that the disparate treatment between petitioner and his codefendant did not violate petitioner's right to equal protection under the Fourteenth Amendment.

### C.

Petitioner next contends that he received ineffective assistance of counsel in the innocence/guilt phase of his trial in violation of his Sixth Amendment right to counsel.[4] In his habeas petition, petitioner alleged a multitude of grounds on which his attorney was constitutionally ineffective. Before this court, petitioner also alleges that the federal district court erred in failing to hold an evidentiary hearing on the subject. We disagree.

The Sixth Amendment guarantees defendants the right to the effective assistance of counsel in state criminal trials. *See McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). To prove that counsel was constitutionally ineffective, a defendant must show "that counsel's performance was deficient"

---

**4.** Petitioner also alleges that he was denied effective assistance of counsel at his first and second penalty hearings. Again, petitioner's current death sentence is based on his *third* sentencing hearing, at which Judge Cannon fully reweighed the aggravating and mitigating circumstances of the murders and considered petitioner's personal

culpability under *Enmund*. Thus, whether petitioner received ineffective assistance at the first two sentencing hearings is immaterial at this point because it could have had no effect on the imposition of petitioner's current death sentence. We therefore do not address these allegations.

and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Romero v. Tansy,* 46 F.3d 1024, 1029 (10th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995); *Stafford v. Saffle,* 34 F.3d 1557, 1562 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1830, 131 L.Ed.2d 751 (1995). Under the second prong of the *Strickland* test, a defendant demonstrates prejudice when she shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also Harris v. Champion,* 15 F.3d 1538, 1569 (10th Cir.1994) (quoting the same); *United States v. Stevens,* 978 F.2d 565, 568 (10th Cir.1992). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

As this court has noted before, it is often "easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient." *United States v. Haddock,* 12 F.3d 950, 955 (10th Cir.1993); *see also Brewer,* 51 F.3d at 1523. Because we believe this to be true in the case at bar—with the exception of petitioner's contention that counsel was ineffective for advising petitioner to waive his right to a jury—we will examine the prejudice prong for each of his ineffectiveness claims first (except for the one relating to the jury waiver).

In analyzing whether counsel's alleged errors prejudiced petitioner, we must keep in mind the standard to be applied in assessing whether petitioner is entitled to an evidentiary hearing in federal court on his ineffectiveness claim. "First, the petitioner bears the burden of 'alleg[ing] facts which, if proved, would entitle him to relief.'" *Brecheen,* 41 F.3d at 1362 (quoting *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), *overruled in part by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715,

118 L.Ed.2d 318 (1992)). Moreover, his allegations must be specific and particularized; "[c]onclusory allegations will not suffice to warrant a hearing." *Andrews,* 802 F.2d at 1266; *see also Adams v. Armontrout,* 897 F.2d 332, 334 (8th Cir.1990). If the petitioner meets that burden, a federal district court must hold a hearing unless the petitioner "receive[d] a full and fair evidentiary hearing in the state court, either at the time of the trial or in a collateral proceeding." *Brecheen,* 41 F.3d at 1363 (emphasis and internal quotation marks omitted). Petitioner need only meet the first part of the test here because no state court held an evidentiary hearing on his ineffectiveness claim.

■ Turning to petitioner's various grounds for alleging ineffectiveness, he first argues that his attorney failed to establish an effective attorney-client relationship. This contention must fail. First, there is no right to a "'meaningful relationship' between an accused and his counsel." *Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983); *see also United States v. Mitchell,* 788 F.2d 1232, 1236 (7th Cir.1986). Second, petitioner has not shown any resulting prejudice. That is, petitioner has failed to put forth any material facts demonstrating that his allegedly poor relationship with counsel affected the outcome of his trial. Nothing in the record indicates how a better working relationship would have prevented petitioner's conviction.

■ Petitioner also contends that the inadequacy of counsel's pretrial investigation rendered his assistance constitutionally ineffective. Yet petitioner does not state what exculpatory evidence an adequate investigation would have discovered or how this evidence would have affected the outcome of the innocence/guilt phase of the trial.[5] Thus, even if counsel's pretrial investigation were constitutionally deficient, petitioner has not demonstrated any resulting prejudice.

Petitioner next objects to trial counsel's decision not to retain a psychiatrist or to request state funds to employ one. According to petitioner, this omission resulted in the

---

5. Petitioner does indicate what information counsel should have uncovered for petitioner's first sentencing hearing before Judge Martin.

But, as we have already noted, any ineffectiveness at petitioner's first and second sentencing hearings is irrelevant to this appeal.

state not examining whether petitioner was competent to stand trial and in counsel failing to present evidence of petitioner's lack of intent to commit murder.

■ Again, regardless of whether this decision by counsel rendered his assistance inadequate, petitioner has shown no prejudice. Under Oklahoma law, a defendant is competent to stand trial if he has "sufficient ability to consult with his attorney" and "a rational and actual understanding of the proceedings against him." *Lambert v. Oklahoma*, 888 P.2d 494, 498 (Okla.Crim.App. 1994) (quoting *Middaugh v. Oklahoma*, 767 P.2d 432, 434 (Okla.Crim.App.1988)); *see also Bryson v. Oklahoma*, 876 P.2d 240, 249 (Okla.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995). Under the United States Constitution, a defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788–89, 4 L.Ed.2d 824 (1960) (per curiam) (internal quotation marks omitted). Petitioner does not point to any evidence that would show that he fell below this standard. Indeed, the record indicates petitioner was competent to stand trial. He testified before the trial that he understood the information and the nature of the charge, and his testimony during the trial about the crime and his responsibility was lucid and intelligible.

■ As for petitioner's mental state at the time of the murders, petitioner concedes that he "had the intent ... to rob the Douglass family," but claims that he lacked the intent to kill. This argument, however, would have been irrelevant at the innocence/guilt phase of petitioner's trial. Petitioner was charged with first degree felony murder. *See* Okla.Stat.Ann. tit. 21, § 701.7(B) (West Supp.1982). "[M]alice aforethought is not an element of first degree felony murder," *Stiles v. Oklahoma*, 829 P.2d 984, 992 (Okla.Crim.App.1992); rather, "the

underlying felony suffices as proof of intent to take away human life," *Freeman v. Oklahoma*, 876 P.2d 283, 287 (Okla.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). Because petitioner's state of mind at the time of the murders was not an issue relevant to his conviction for first degree murder, a psychiatrist could not have aided petitioner.[6]

Petitioner next contends that trial counsel was ineffective because he failed to preserve certain issues for appeal. Petitioner does not, however, explain which issues counsel failed to preserve or how he was prejudiced by counsel's failure to raise them on appeal. Petitioner also argues that counsel did not request recordings of certain conferences in chambers with the trial judge. But he does not state when these conferences occurred, what was discussed, or how obtaining the recordings could have changed the outcome of the trial. There is therefore no basis for a finding that petitioner was prejudiced by these alleged trial counsel errors.

Petitioner next claims that counsel was ineffective because he failed to seek the recusal of Judge Martin, who presided over petitioner's trial and first sentencing hearing. Judge Martin was a lay minister of the same faith as Reverend Douglass, one of the murder victims. Petitioner alleges that, because of the potential for bias, counsel should have sought to have Judge Martin disqualified. The Oklahoma Court of Criminal Appeals reviewed this claim on petitioner's direct appeal. *See Hatch I*, 662 P.2d at 1380–1381. Like that court, *see id.* at 1380, we do not place the same significance on this commonality of religion as petitioner. Moreover, our reading of Oklahoma law confirms that Judge Martin would not have been required to recuse himself in this case. *See, generally*, Okla.Stat.Ann. tit. 20, § 1401 (West Supp. 1991) (establishing the standards for disqualification of a trial judge). We therefore conclude that, because petitioner "has not proven that the judge ... was biased," *Hatch I*, 662 P.2d at 1380, he has suffered no prejudice.

6. This discussion also dispenses with petitioner's allegation that trial counsel was constitutionally ineffective due to his failure to show "that [petitioner's] mental condition prevented him from forming the requisite intent to support the charges against him."

Petitioner alleges that counsel was ineffective because he failed to file for state post-conviction relief before filing petitioner's federal habeas petition. When current counsel was appointed, however, this court held petitioner's federal petition in abeyance so that counsel could file for state post-conviction relief. As a result of the state application, petitioner's second death sentence was vacated, prior to Judge Cannon reimposing the death penalty at petitioner's third sentencing proceeding. See Hatch III, 835 P.2d at 882. Thus, even though petitioner's original counsel did not file for post-conviction relief, petitioner's application was ultimately filed, and the Oklahoma courts adjudicated the claims presented therein. See id. Consequently, petitioner cannot claim prejudice from his original counsel's failures in this regard.[7]

■■■ Finally, petitioner contends that his trial counsel was constitutionally ineffective for advising petitioner to waive his right to be tried by a jury. Under the first prong of the Strickland test, a defendant must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Moreover, in evaluating an ineffectiveness claim, this court must presume that "the challenged action 'might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. at 2065 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). A defendant bears the burden of overcoming this presumption. Id.

■■■ An attorney's decision to waive his client's right to a jury is a classic example of a strategic trial judgment, "the type of act for which Strickland requires that judicial scrutiny be highly deferential." Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989) (per curiam). It constitutes a conscious, tactical choice between two viable alternatives. Carter v. Holt, 817 F.2d 699, 701 (11th Cir.1987); see also United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir.1983) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance."). For counsel's advice to rise to the level of constitutional ineffectiveness, the decision to waive a jury must have been "completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." Id. at 4; see also Carter, 817 F.2d at 701 (stating that an ineffectiveness claim based on counsel's decision to waive a jury is viable only if the choice was "so unreasonable that no competent attorney would have chosen it").

In this case, petitioner has failed to show such incompetence. Instead, petitioner merely makes several conclusory allegations. For instance, he argues that "it is inconceivable that a jury would have sentenced [him] to death," that "it is difficult to believe that a reasonable factfinder ... would have opted for death," and that his attorney's decision to waive the jury was "strategically inane." These allegations, without more, do not show that counsel's choice bore "no relationship to a possible defense strategy." Rather, without any evidence to the contrary, we have no basis to conclude that counsel's decision was unreasonable. Petitioner has therefore alleged no facts that, if proved, would demonstrate that this choice rendered counsel's assistance constitutionally ineffective.

In sum, petitioner has failed to demonstrate that he received ineffective assistance of counsel at the innocence/guilt phase of his trial. He has not shown that he suffered prejudice as a result of any of the several different grounds on which he claims counsel was constitutionally inadequate, or that counsel's recommendation that petitioner waive his right to a jury was unreasonable. We therefore conclude that the district court did not err in refusing to conduct an evidentiary hearing or in concluding that petitioner had

---

7. Petitioner also contends that counsel was ineffective because, when petitioner appealed, counsel failed to allege that the state had withheld evidence of an inducement to a government witness and that the judge had considered an unadjudicated offense. We examine those issues later in this opinion and conclude that these issues are meritless. Because the Oklahoma Court of Criminal Appeals would not have found error if petitioner had raised these issues on direct appeal, petitioner was not prejudiced by counsel's failure to raise them.

not alleged any conduct by counsel that violated the Sixth Amendment.

## IV. APPELLATE COURT ERROR

■ After Judge Cannon vacated petitioner's second death sentence in a state post-conviction proceeding and then resentenced petitioner to death, petitioner appealed to the Oklahoma Court of Criminal Appeals. *See Hatch III,* 835 P.2d at 880. In that appeal, petitioner raised twelve issues for review, of which the court examined only two.[8] The court reasoned that it had originally remanded petitioner's case following *Hatch I,* 662 P.2d at 1377, only for a review of petitioner's individual culpability under *Enmund. Hatch III,* 835 P.2d at 882. Although Judge Cannon's resentencing went beyond an *Enmund* review, the Court of Criminal Appeals stated that "the only matter before th[e] Court is th[e] validity of [petitioner's resentencing] in light of *Enmund.*" *Id.* at 883. Petitioner now argues on habeas review that the state violated a "constitutional right to an appeal" because the Oklahoma Court of Criminal Appeals failed to consider all twelve of his allegations of error on appeal from his third sentencing hearing.

■ Of course, petitioner cannot claim that the state denied him his right to substantive due process; there is no constitutional right to an appeal under the Due Process Clause. *See Goeke v. Branch,* — U.S. —, —, 115 S.Ct. 1275, 1277, 131 L.Ed.2d 152 (1995) (per curiam) (" '[A] convicted criminal has no constitutional right to an appeal.' ") (quoting *Ortega–Rodriguez v. United States,* — U.S. —, —, 113 S.Ct. 1199, 1210, 122 L.Ed.2d 581 (1993) (Rehnquist, C.J., dissenting)); *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977) ("[I]t is well settled that

there is no constitutional right to an appeal."); *McKane v. Durston,* 153 U.S. 684, 687, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894) ("A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law, and is not now, a necessary element of due process of law.").

■ Petitioner's due process claim regarding his right to an appeal must therefore focus on whether the state comported with the requirements of procedural due process. While "it is not the province of a federal habeas court to reexamine state court determinations on state law questions," *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *see also Tucker v. Makowski,* 883 F.2d 877, 882 (10th Cir. 1989) (per curiam), a state law may create a liberty interest that cannot be denied without offending due process principles, *see Clemons v. Mississippi,* 494 U.S. 738, 746, 110 S.Ct. 1441, 1447, 108 L.Ed.2d 725 (1990); *Ross v. Oklahoma,* 487 U.S. 81, 91, 108 S.Ct. 2273, 2279–80, 101 L.Ed.2d 80 (1988). Thus, we must ask whether Oklahoma deprived petitioner of any state-created "entitlement." *Cf. Clemons,* 494 U.S. at 746, 110 S.Ct. at 1447; *Cabana v. Bullock,* 474 U.S. 376, 387 n. 4, 106 S.Ct. 689, 697 n. 4, 88 L.Ed.2d 704 (1986), *overruled in part on other grounds by Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

Under Oklahoma law, petitioner was entitled to an appeal from his conviction and sentence. *See* Okla.Stat.Ann. tit. 22, § 1051(a) (West 1986) ("An appeal to the Court of Criminal Appeals may be taken by the defendant, as a matter of right from any judgment against him."); *id.* tit. 21, § 701.13(A) (West Supp.1995) ("Whenever the death penalty is imposed, and upon the

---

8. The ten issues that the court declined to review were that: (1) the enforcement of the revocation of two state provisions violated the Ex Post Facto Clause; (2) Oklahoma's "especially heinous, atrocious, or cruel" aggravator was unconstitutionally vague and overbroad; (3) petitioner's single course of criminal conduct was not probative of whether he was a continuing threat to society; (4) Judge Cannon unconstitutionally attributed Mr. Ake's acts to petitioner; (5) the bill of particulars did not satisfy state notice provi-

sions; (6) the bill of particulars did not provide notice of the evidence of other crimes; (7) petitioner's sentence was unconstitutionally disproportionate to his codefendant's sentence; (8) petitioner was denied his right to be sentenced by a jury; (9) Judge Cannon unconstitutionally considered unadjudicated offenses; and (10) petitioner's death sentence was against the weight of the evidence. We address many of these same issues in this opinion.

judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Oklahoma Court of Criminal Appeals."). In this case, however, petitioner did in fact receive an appeal. The Oklahoma Court of Criminal Appeals reviewed two of his claims and affirmed the conviction. *Hatch III*, 835 P.2d at 880. Thus, petitioner cannot claim that he was entirely denied his right to appeal.

Instead, petitioner contends that, by reviewing only two of his twelve claims, the state deprived him of an *adequate* appeal. *Cf. Campbell v. Blodgett*, 997 F.2d 512, 522–25 (9th Cir.1992) (reviewing a petitioner's claim that the State of Washington deprived him of procedural due process because, although the state supreme court conducted a mandatory proportionality review of his death sentence, the court did so in an inadequate manner), *cert. denied,* —— U.S. ——, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994). To succeed on such a claim, petitioner must show that Oklahoma law entitled him to appellate review of all the issues that he raised.

Most of the Oklahoma statutes and rules discussing procedural requirements for appeals in Oklahoma state court delineate the parties' duties, not the courts' responsibilities. *See, e.g.,* Okla. Const. art. 7–A, § 5 (discussing appeals to appellate division); Okla.R.Crim.App. 1.0 *et seq.* (establishing rules of procedure for the Oklahoma Court of Criminal Appeals). Where Oklahoma law does broach the subject of the Oklahoma Court of Criminal Appeals' duties, the regulations generally address the formalities of internal court procedure. *See, e.g.,* Okla. Stat.Ann. tit. 20, § 49 (West 1991) (specifying how the court shall file its opinions); Okla. R.Crim.App. 3.13 (establishing the voting procedure for the court's decisions).

While petitioner would argue that Oklahoma law constrains the Court of Criminal Appeals' powers, the language of the relevant statutes and rules give the court rather sweeping discretion. According to Oklahoma law, the Court of Criminal Appeals "may" review "any decision of the [lower] court ... made in the progress of the case." Okla. Stat.Ann. tit. 22, § 1051 (West 1986). The court's powers also include the ability to "ascertain such matters of fact as may be necessary to the exercise of its jurisdiction." *Id.* tit. 20, § 42 (West 1991). And the Court of Criminal Appeals has construed these statutes as giving it "the authority to determine, in a criminal matter, when it has the power to proceed." *Duvall v. Oklahoma,* 871 P.2d 1386, 1388 (Okla.Crim.App.1994).

In light of the broad powers afforded the Court of Criminal Appeals under Oklahoma law, as well as the lack of mandatory responsibilities imposed on the court by statute, we conclude that criminal defendants in Oklahoma are not entitled to a review of every claim of error made in their appeals to that court. · Consequently, the Court of Criminal Appeals' decision not to ˙review ten of petitioner's allegations in his state appeal did not deprive petitioner of his constitutional right to procedural due process.

## V. RESENTENCING ERROR

### A.

 When petitioner was originally tried in Oklahoma in 1980, he waived his right to a jury trial. Petitioner asserts that, after Judge Cannon vacated his sentence, he requested a jury for his resentencing and that Judge Cannon denied his request.[9] Petitioner now claims that Judge Cannon's denial of his request for a jury deprived him of due process.

 First, we must note that petitioner can claim no substantive constitutional right under the Due Process Clause to have his punishment assessed by a jury. "Any argument that the Constitution requires that a

---

9. Petitioner points to no place in the record where this objection was raised and ruled upon in state court. "[W]ith respect to each issue raised on appeal, [we require] a statement as to where in the record the issue was raised and ruled upon." 10th Cir. R. 28.2(c).

We cannot find petitioner's request for a jury at his third sentencing hearing anywhere in the record. Of course, if petitioner never made such a request, it could not possibly have been error for Judge Cannon not to have impaneled a jury. Nevertheless, because we find that petitioner's claim fails on the merits, we assume *arguendo* that he made the request.

jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected." *Clemons,* 494 U.S. at 745, 110 S.Ct. at 1446; *see also McMillan v. Pennsylvania,* 477 U.S. 79, 93, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986) ("[T]here is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact."). As a result, like petitioner's claim concerning the review of his state appeal, any constitutional right must derive from a state law entitlement.

To demonstrate an entitlement under Oklahoma law, petitioner attempts to analogize this case to *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). In *Hicks,* the jury had imposed on defendant a forty year prison term, the mandatory minimum sentence for his offense under Oklahoma's habitual offender statute. *Id.* at 344–45, 100 S.Ct. at 2228–29. The Oklahoma Court of Criminal Appeals subsequently declared the habitual offender statute under which Hicks was sentenced unconstitutional. *Thigpen v. Oklahoma,* 571 P.2d 467, 471 (Okla.Crim.App.1977). That court nevertheless affirmed Hicks' sentence on appeal, "reasoning that the petitioner was not prejudiced by the impact of the invalid statute, since his sentence was within the range of punishment that could have been imposed in any event." *Hicks,* 447 U.S. at 345, 100 S.Ct. at 2229.

The Supreme Court reversed Hicks' sentence. Noting that state law had vested the discretion of sentencing in juries, the Court found it "[in]correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law." *Id.* at 346, 100 S.Ct. at 2229. To the contrary, the "liberty interest [created by the state] is one that the Fourteenth Amendment preserves against arbitrary deprivation." *Id.* Because petitioner had a state right to be sentenced by a jury but was in fact sentenced by the appellate court, the state had violated Hicks' right to procedural due process. *Id.* at 347, 100 S.Ct. at 2230; *cf. Carbray v. Champion,* 905 F.2d 314 (10th Cir. 1990) (discussing *Hicks* ), *cert. denied,* 498 U.S. 1072, 111 S.Ct. 796, 112 L.Ed.2d 858 (1991).

The Court's decision in *Hicks,* of course, did not create any general entitlement to be sentenced by a jury that might be applicable to petitioner. Indeed, Hicks was sentenced under a different statute than petitioner and claimed a distinct infringement on his right to a jury. But *Hicks* reinforces the appropriate analytical framework for our inquiry, namely that we must examine Oklahoma law to determine whether petitioner's due process rights were unconstitutionally impaired.

Petitioner concedes that he waived his right to a jury trial in the innocence/guilt phase of his trial before Judge Martin. Under Oklahoma law, "[i]f the trial jury has been waived by the defendant and the state, ... the sentencing proceeding shall be conducted before the court." Okla.Stat.Ann. tit. 21, § 701.10 (West Supp.1982) (amended 1987, 1989, 1992). Because petitioner had waived his right to a jury trial at the innocence/guilt phase, Judge Martin was also the factfinder for petitioner's first sentencing proceeding.

Petitioner argues, however, that his initial waiver was inoperable after the first trial ended, so that when his case was remanded, he should have been entitled to request a jury. Under Oklahoma law, "[a] judgment reversed and remanded with directions to grant a new trial, results, except for questions of law settled by the proceedings in error, in the action standing as if no trial had been held." *Seymour v. Swart,* 695 P.2d 509, 512–13 (Okla.1985); *see also* Okla.Stat.Ann. tit. 22, § 951 (West 1986) ("The granting of a new trial places the parties in the same position as if no trial had been had.") (amended 1989). Consequently, "a waiver of a jury trial is not binding on a subsequent trial if the right to trial by jury is otherwise applicable." *Seymour,* 695 P.2d at 512.

Here, however, neither the appellate court in *Hatch I* nor the state district court on post-conviction review ordered a new trial. Instead, they ordered that petitioner be re-sentenced. In a capital murder case, a defendant has the right to be sentenced before the "trial jury." Okla.Stat.Ann. tit. 21, § 701.10 (West Supp.1982) (amended 1987, 1989, 1992). Here, however, there was no "trial jury" because the innocence/guilt phase

of petitioner's trial was conducted before a judge. The same rule that allowed Judge Martin to sentence petitioner at his first sentencing hearing still operated when only petitioner's sentencing was repeated: "If the trial jury has been waived by the defendant and the state, ... the sentencing proceeding shall be conducted before the court." *Id.* Thus, unlike in *Seymour*, the right to a trial by jury was not "otherwise applicable." Accordingly, petitioner had no entitlement under Oklahoma law to be sentenced by a jury at his third sentencing proceeding.[10]

## B.

■ Petitioner also claims that Oklahoma laws enacted subsequent to the murders but applied in petitioner's case "substantially disadvantaged" him and therefore violated the Ex Post Facto Clause. *See* U.S. Const. art. 1, § 10, cl. 1. "The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation." *Landgraf v. USI Film Prods.*, —— U.S. ——, ——, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). But "[t]he inhibition upon the passage of ex post facto laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed." *Gibson v. Mississippi*, 162 U.S. 565, 590, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896).

The Supreme Court recently examined the scope of the Ex Post Facto Clause in *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). At issue in *Collins* was a Texas statute allowing for the reformation of an improper jury verdict. *Id.* at 39, 110 S.Ct. at 2717–18. Although the Texas legislature had enacted the law after the defendant had committed his offense, the Texas appellate court applied the new statute in affirming the defendant's conviction. *Id.* at 40, 110 S.Ct. at 2718. The defendant argued to the Supreme Court that, even though the new law was procedural and not substantive, the appellate court's use of the statute was unconstitutional because the new

law altered a "substantial protection" for criminal defendants. *Id.*

The Court held that Texas had not violated the defendant's rights under the Ex Post Facto Clause. *Id.* at 37, 110 S.Ct. at 2716. The Court examined two of its prior cases, *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), and *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). *Kring* had defined an ex post facto law as one that "alters the situation of a party to his disadvantage," *Kring*, 107 U.S. at 228–29, 2 S.Ct. at 449, while *Thompson* had held that a law violated the ex post facto prohibition because it "deprive[d] [the defendant] of a substantial right involved in his liberty," *Thompson*, 170 U.S. at 352–53, 18 S.Ct. at 623.

The Court noted that the language of these cases had "imported confusion into the interpretation of the *Ex Post Facto* Clause." *Collins*, 497 U.S. at 45, 110 S.Ct. at 2721. After showing that *Thompson*'s "substantial rights" language had departed from the original meaning of the Clause, the Court overruled *Kring* and *Thompson*, *id.* at 47–52, 110 S.Ct. at 2721–24, and characterized many of the decisions using similar language as saying "that by simply labeling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the *Ex Post Facto* Clause," *id.* at 46, 110 S.Ct. at 2721. The Court then reiterated the definition of an ex post facto law originally formulated in *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925): A law violates the ex post facto prohibition if it "make[s] innocent acts criminal, alter[s] the nature of the offense, or increase[s] the punishment." *Collins*, 497 U.S. at 46, 110 S.Ct. at 2721; *see also Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297–98, 53 L.Ed.2d 344 (1977); *Stephens*, 19 F.3d at 500.

The Court has subsequently reaffirmed its holding in *Collins*, stating that "the [Ex Post Facto] Clause is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"

10. Subsequent to petitioner's raising of these issues, Oklahoma has revised its law to make clear that a capital defendant does not receive a jury on resentencing if he waived his right to a jury at the original trial. *See* Okla.Stat.Ann. tit. 21, § 701.10a(1)(a) (West Supp.1995); *id.* tit. 22, § 951(C) (West Supp.1995); *Crawford v. Oklahoma*, 881 P.2d 88 (Okla.Crim.App.1994).

*California Dep't of Corrections v. Morales,* —— U.S. ——, ——, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (quoting *Collins,* 497 U.S. at 43, 110 S.Ct. at 2719–20). With these principles in mind, we turn to petitioner's assertions of error.

Petitioner's first ex post facto claim is that the state violated his rights by not performing a proportionality review after his third sentencing hearing. At the time of the murders, Oklahoma law required the Oklahoma Court of Criminal Appeals, upon every appeal from a death sentence, to consider "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Okla.Stat.Ann. tit. 21, § 701.13(C)(3) (West Supp.1982) (amended 1985). The Oklahoma legislature deleted that provision in 1985. *See id.* § 701.13(C) (West Supp.1995). The Oklahoma Court of Criminal Appeals did not conduct a proportionality review following petitioner's third sentencing proceeding, *see Hatch III,* 835 P.2d at 880, despite petitioner's protestations that his sentence was disproportionate to Mr. Ake's life sentence.

This action does not violate the Ex Post Facto Clause. The penalty for first degree murder, both before and after the legislature changed section 701.13(C)(3), was death. Petitioner cannot "escape the ultimate burden of establishing that the measure of punishment itself has changed." *Morales,* —— U.S. at ——, 115 S.Ct. at 1603 n. 6. Here, the legislature's action merely altered "the procedures by which [the] case is adjudicated, as opposed to [altering] the substantive law of [the] crime[ ]." *Collins,* 497 U.S. at 45, 110 S.Ct. at 2720. The Ex Post Facto Clause does not "require the sentence be carried out under the identical legal regime that previously prevailed." *Morales,* —— U.S. at —— n. 6, 115 S.Ct. at 1603 n. 6. We therefore hold that the Oklahoma Court of Criminal

Appeals' decision not to conduct a proportionality review did not violate the Ex Post Facto Clause.

■ Petitioner's second ex post facto claim concerns the law governing the Oklahoma Court of Criminal Appeals' procedures for remand. When petitioner committed the crime, Oklahoma law required the Court of Criminal Appeals either to affirm the sentence of death or to set the sentence aside and modify the sentence to life imprisonment. Okla.Stat.Ann. tit. 21, § 701.13(E) (West 1983); *see also Eddings v. Oklahoma,* 688 P.2d 342 (Okla.Crim.App.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 814 (1985).[11] In 1985, however, the Oklahoma legislature gave the court the additional option of remanding the case for resentencing. *See* Okla.Stat.Ann. tit. 21, § 701.13(E)(2) (West Supp.1995).

Petitioner's first two appeals to the Oklahoma Court of Criminal Appeals—stemming from his first two sentencing hearings—were decided in 1983 and May 1985, respectively. *See Hatch I,* 662 P.2d at 1377; *Hatch II,* 701 P.2d at 1039. The new version of section 701.13(E) did not become effective, however, until July 16, 1985. *See* Okla.Stat.Ann. tit. 21, § 701.13(E) (West Supp.1995). Thus, for there to have been an ex post facto violation, the change in section 701.13(E) must have somehow affected the Oklahoma Court of Criminal Appeals' disposition of petitioner's case subsequent to July 16, 1985.

The record is clear that the new law had no such impact. The only time subsequent to July 16, 1985, that petitioner's sentence was altered or amended was when Judge Cannon determined that petitioner's application for post-conviction relief properly alleged error. When an Oklahoma court finds in favor of an applicant for post-conviction relief, "it shall vacate and set aside the judg-

---

11. The Oklahoma Court of Criminal Appeals ruled that the requirements of section 701.13(E) did not apply to petitioner when the court originally vacated his sentence because it had only remanded his case for an *Enmund* evidentiary hearing. *See Hatch II,* 701 P.2d at 1039–40. Even if petitioner were to challenge this construction of former section 701.13(E) directly, we would have to defer to the Oklahoma court's construction of a state statute. *See Manlove,* 981 F.2d at 478 (stating that, in a habeas corpus case, "[t]he interpretation of state law by [the state's] highest court is binding"); *Rael v. Sullivan,* 918 F.2d 874, 877 (10th Cir.1990), *cert. denied,* 499 U.S. 928, 111 S.Ct. 1328, 113 L.Ed.2d 260 (1991); *Larsen v. Frazier,* 835 F.2d 258, 259 (10th Cir.1987).

ment and sentence and discharge or resentence him, or grant a new trial, or correct or modify the judgment and sentence as may appear appropriate." Okla.Stat.Ann. tit. 22, § 1085 (West 1986). Judge Cannon's resentencing authority flowed from section 1085, not section 701.13(E)(2). Thus, the change to section 701.13(E) never affected petitioner's third sentencing proceeding; he therefore can show no ex post facto violation.

### C.

▮ Petitioner next alleges that the state court violated his right to due process when it heard evidence of unadjudicated crimes in imposing his third death sentence. In *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the trial judge considered evidence that the defendant had committed several burglaries for which he had not been convicted. *Id.* at 244, 69 S.Ct. at 1081–82. The trial judge had cited this evidence in sentencing the defendant to death despite the jury's recommendation that he receive life in prison. *Id.* In reviewing the conviction, the Supreme Court noted that "[t]he belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." *Id.* at 247, 69 S.Ct. at 1083. The Court therefore held that it was constitutionally permissible for a sentencing judge to seek information from out-of-court sources indicating that the defendant had participated in unadjudicated offenses. *Id.* at 251–52, 69 S.Ct. at 1085–86.

The Court has since discredited some of the logic that undergirded its decision in *Williams*. Most notably, in *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (opinion of Stevens, J.), the Court repudiated *Williams'* assumption that a death penalty is constitutionally indistinguishable from other forms of punishment. *Id.* at 357, 97 S.Ct. at 1204 (noting that a majority of the Court had "recognized that death is a different kind of punishment from

any other which may be imposed in this country."). The Court has not, however, called into question the essence of *Williams'* holding—that a judge's consideration of evidence of unadjudicated crimes in imposing the death sentence does not violate a petitioner's due process rights. *See Nichols v. United States*, —— U.S. ——, ——, 114 S.Ct. 1921, 1928, 128 L.Ed.2d 745 (1994) (citing *Williams* and stating that "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior."). Indeed, the Supreme Court has consistently ruled that "relevant, unprivileged evidence should be admitted and its weight left to the factfinder, who would have the benefit of cross-examination and contrary evidence by the opposing party." *Barefoot*, 463 U.S. at 898, 103 S.Ct. at 3397. We therefore follow *Williams* and join three other Circuit Courts in holding that the admission of evidence of unadjudicated offenses at a sentencing proceeding does not violate due process.[12] *See Devier v. Zant*, 3 F.3d 1445, 1464–65 (11th Cir.1993) ("[I]t is acceptable to consider evidence of crimes for which a defendant has been indicted but not convicted. Activities for which there has been no charge filed can be considered as well."), *cert. denied*, —— U.S. ——, 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995); *Coleman v. Risley*, 839 F.2d 434, 459 (9th Cir.1988) ("We have long held that the due process clause does not preclude the sentencing judge from considering evidence of prior criminal conduct not resulting in a conviction."), *rev'd on other grounds sub nom. Coleman v. McCormick*, 874 F.2d 1280 (9th Cir.) (en banc), *cert. denied*, 493 U.S. 944, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989); *Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir.) ("[T]he admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments."), *cert.*

---

**12.** Oklahoma allows the consideration of unadjudicated offenses in a sentencing hearing. *See, e.g., Berget v. Oklahoma*, 824 P.2d 364, 377 (Okla. Crim.App.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Johnson v.* *Oklahoma*, 731 P.2d 993, 1003 (Okla.Crim.App.), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), *overruled on other grounds by Green v. Oklahoma*, 862 P.2d 1271 (Okla. Crim.App.1993).

*denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987).[13]

## D.

■ Traditionally, criminal defendants have challenged certain sentences as being disproportionate to the offense of conviction. In this case, however, petitioner contends that the Constitution requires that he receive a sentence proportional to others who have committed the same offense. In other words, petitioner believes that his sentence should be no more severe than his codefendant, Glen Ake, because he asserts that Ake is more culpable for the murders.[14]

In *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Supreme Court addressed "whether the Eighth Amendment ... requires a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases if requested to do so by the prisoner." *Id.* at 43–44, 104 S.Ct. at 876. The Court noted that it had previously upheld death penalty statutes even though the statutory scheme did not provide for appellate review. *Id.* at 48–49, 104 S.Ct. at 878–79 (analyzing *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)). Accordingly, the Court concluded that "[t]here is ... no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it." *Id.* at 50–51, 104 S.Ct. at 879.

The proportionality review requested by petitioner in this case differs slightly from that addressed by the Court in *Harris. Harris* examined appellate court review for proportionality in relation to *all* defendants, whereas here petitioner requested a proportionality review of his sentence relative only to his codefendant. Thus, petitioner's claim resembles that raised by the defendant in *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). McClesky "argue[d] that the sentence in his case [wa]s disproportionate to the sentences in other murder cases." *Id.* at 306, 107 S.Ct. at 1774. Relying on *Harris,* the Supreme Court dismissed McClesky's argument, holding that he could not "prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty." *Id.* at 306–07, 107 S.Ct. at 1775.

In this case, petitioner was constitutionally entitled to a determination of his individual culpability, *see Enmund,* 458 U.S. at 801, 102 S.Ct. at 3378–79, and he received that individualized consideration. The Constitution does not demand that he receive a review of his comparative responsibility as well. *Accord Pickens v. Lockhart,* 4 F.3d 1446, 1454 n. 4 (8th Cir.1993) ("Comparative proportionality review of death sentences is not constitutionally required."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994); *Brogdon v. Blackburn,* 790 F.2d 1164, 1170 (5th Cir.1986) ("A State need not even undertake any sort of proportionality review of death sentences so long as the underlying sentencing scheme minimizes arbitrary and capricious sentencing."), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987); *Roach v. Martin,* 757 F.2d 1463, 1482 (4th Cir.) (holding that "a comparative [proportionality] review is not constitutionally mandated"), *cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).[15] We find

---

**13.** We nonetheless acknowledge that some judges and commentators have reached a different conclusion. *See, e.g., Williams v. Lynaugh,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987) (denial of certiorari) (Marshall, J., dissenting); *Coleman,* 874 F.2d at 1292 n. 2 (9th Cir. 1989) (en banc) (Reinhardt, J., concurring); Steven Paul Smith, Note, *Unreliable and Prejudicial: The Use of Extraneous Unadjudicated Offenses in the Penalty Phases of Capital Trials,* 93 Colum.L.Rev. 1249 (1993).

**14.** The Supreme Court reversed Mr. Ake's conviction. *Ake v. Oklahoma,* 470 U.S. 68, 86–87, 105 S.Ct. 1087, 1097–98, 84 L.Ed.2d 53 (1985). On remand, Mr. Ake was sentenced to life imprisonment. *See Ake v. Oklahoma,* 778 P.2d 460, 461–62 (Okla.Crim.App.1989).

**15.** The Oklahoma Court of Criminal Appeals has also ruled that, barring a statutory mandate, it need not conduct a proportionality review. *Battenfield v. Oklahoma,* 816 P.2d 555, 563–64 (Okla.Crim.App.1991), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992).

no error in the Oklahoma courts' refusal to review the proportionality of petitioner's sentence relative to Mr. Ake's.

### E.

■ At petitioner's third sentencing hearing, the state called Virginia Rose Anderson [16] as a witness. Ms. Anderson was a traveling companion of petitioner and Mr. Ake after they left Oklahoma. When Ms. Anderson could not remember some of the details of their activities together, the prosecution attempted to refresh her memory with an eight-page statement she had previously given police. That attempt failed. The state then introduced the statement as past recollection recorded. *See* Okla.Stat.Ann. tit. 12, § 2803(5) (West 1993). Petitioner claims that the admission of this evidence violated his rights under the Confrontation Clause. *See* U.S. Const. amend. VI.

■ While we review due process challenges to state evidentiary rulings only for fundamental unfairness, *Maes,* 46 F.3d at 987, we examine a defendant's claim under the Confrontation Clause de novo, *see Miranda v. Cooper,* 967 F.2d 392, 401 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992). Moreover,

> [a]lthough the rules of evidence are helpful in determining whether Confrontation Clause rights are violated, on habeas corpus review "we need not address whether hearsay evidence was properly admitted . under the [Oklahoma Evidence Code] or whether admission would have been proper under the Federal Rules of Evidence; rather our inquiry is whether the admission of hearsay evidence deprived [the defendant] of his rights under the Sixth Amendment to confront and cross-examine the witnesses against him."

*Jennings v. Maynard,* 946 F.2d 1502, 1505 (10th Cir.1991) (quoting *Hopkinson,* 866 F.2d at 1201).

In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court acknowledged that it has never held that "the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* at 844, 110 S.Ct. at 3163. Rather, the court has "repeatedly held that the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Id.* at 847–48, 110 S.Ct. at 3164. For the admission of hearsay evidence to comply with the Sixth Amendment, the witness must be unavailable and the statement must bear "sufficient indicia of reliability." *See Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Jennings,* 946 F.2d at 1504–05. Petitioner does not contend that the witness was unavailable; instead, he argues that this type of evidence is inherently unreliable.

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539; *see also White v. Illinois,* 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 743 n. 8, 116 L.Ed.2d 848 (1992). The exception for past recorded recollections is clearly a firmly rooted hearsay exception. *See* Fed.R.Evid. 803(5); *J.C. Penney Co. v. NLRB,* 384 F.2d · 479, 484 (10th Cir.1967) ("The use of a writing as a recorded past recollection has become a firm practice as one of the many exceptions to the hearsay rule."). We therefore hold that the use of this recorded recollection testimony did not violate petitioner's rights under the Confrontation Clause. *Accord United States v. Picciandra,* 788 F.2d 39, 42–43 (1st Cir.) (upholding the use of recorded past recollection against a defendant's Sixth Amendment challenge), *cert. denied,* 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986); *United States v. Smalls,* 438 F.2d 711, 714 (2d Cir.) (same), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971); *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir.1965) (same), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

### F.

■ Petitioner also contests another evidentiary ruling made by Judge Cannon at

---

**16.** At the time that the witness was associated with petitioner, her name was Virginia Keefe.

petitioner's third sentencing hearing. Petitioner called a psychiatrist to the stand, and petitioner's attorney attempted to ask the psychiatrist whether he believed that petitioner was "substantially dominated" by Mr. Ake. The prosecution objected, and the judge sustained the objection. Petitioner contends that this evidentiary ruling violated his right to due process because it denied him the services of his psychiatrist. *See Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

■ Again, in federal habeas proceedings, we do not question a state court's evidentiary rulings unless the petitioner can show that, as a whole, the court's rulings rendered his trial fundamentally unfair. *Maes,* 46 F.3d at 987; *Tapia v. Tansy,* 926 F.2d 1554, 1557 (10th Cir.), *cert. denied,* 502 U.S. 835, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991). In the case at bar, petitioner is unable to show that Judge Cannon's ruling had any such impact. The judge stated that he was sustaining the objection because the doctor could not have determined whether petitioner had been dominated by Mr. Ake based on an interview seven years after the events, and because the doctor's opinion on the matter would have been unscientific. These matters are properly left before the state trial judge. This ruling did not render petitioner's sentencing hearing fundamentally unfair.

■ Petitioner also claims that the judge failed to give adequate credit to the psychiatrist's testimony regarding petitioner's potential to commit acts of future violence. This objection borders on the frivolous. In concluding that petitioner deserved the death penalty, Judge Cannon stated, "One of the things the psychiatrist said [is] that he didn't believe in his opinion that [petitioner] would commit an act of violence. That I find hard to believe."

■ Determinations concerning the credibility of evidence are vested in the discretion of the trial judge. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 850–51, 74 L.Ed.2d 646 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *United States v. Deninno,* 29 F.3d 572, 578 (10th Cir.1994) ("The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). A judge need not take a witness' testimony as true merely because the witness qualifies as an expert. This factual finding is entitled to a presumption of correctness, *see* 28 U.S.C. § 2254(d), and we find no reason to disturb it.

### G.

■ Petitioner asserts that Judge Cannon sentenced him to death based on an unconstitutionally vague aggravating factor. We disagree.

As the Supreme Court has made clear, "a statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty." *Richmond v. Lewis,* —— U.S. ——, ——, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992). In this case, the state court based petitioner's sentence in part on a finding that "the murder was especially heinous, atrocious, or cruel." *See* Okla.Stat. Ann. tit. 21, § 701.12(4) (West 1983). This court has previously held that this instruction, applied without an adequate narrowing construction, violates the Eighth and Fourteenth Amendments and requires that the defendant's death sentence be vacated. *See Cartwright v. Maynard,* 822 F.2d 1477, 1478–79 (10th Cir.1987) (en banc). That ruling was affirmed by the Supreme Court. *Maynard v. Cartwright,* 486 U.S. 356, 363–64, 108 S.Ct. 1853, 1858–59, 100 L.Ed.2d 372 (1988).

■ A court may cure an unconstitutionally vague aggravator, however, by adopting a narrowing construction. *Richmond,* —— U.S. at ——, 113 S.Ct. at 534. In response to our ruling in *Cartwright,* the Oklahoma Court of Criminal Appeals adopted a limiting construction mandating that the murder involve "torture of the victim or serious physical abuse." *See Stouffer v. Oklahoma,* 742 P.2d 562, 563 (Okla.Crim.App.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98

L.Ed.2d 779 (1988). That narrowing interpretation of the "especially heinous, atrocious, or cruel" aggravator has been cited with approval by the Supreme Court. *See Walton v. Arizona,* 497 U.S. 639, 654–55, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990); *Maynard,* 486 U.S. at 365–66, 108 S.Ct. at 1859–60.

■■ Here, a judge sentenced petitioner to death. "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton,* 497 U.S. at 653, 110 S.Ct. at 3057. When sentencing petitioner, Judge Cannon stated that "[t]he phrase especially heinous, atrocious or cruel i[s] directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse." This passage shows that Judge Cannon clearly adopted the constitutionally permissible narrowing construction for the "especially heinous, atrocious, or cruel" aggravator. The only question, then, is whether the judge properly applied the aggravator so construed.

In finding that the aggravating circumstance applied to petitioner's case, Judge Cannon stated:

> When the law talks of torturing people, that doesn't mean you have to put them on the rack or twist their arms or something. I can't think of anymore [sic] torture than to tie a man and a woman up, hog-tie them where they can't move and at the same time while they're laying there waiting to be shot, they listen to their twelve-year-old daughter crying and pleading not to be raped by two grown men.

■■ In habeas proceedings, a federal court must review the state court's application of a narrowing instruction under a "rational factfinder" standard. *Richmond,* —— U.S. at ——, 113 S.Ct. at 534; *see also Lewis v. Jeffers,* 497 U.S. 764, 781–84, 110 S.Ct. 3092, 3102–04, 111 L.Ed.2d 606 (1990). That is, we must uphold the state court's finding so long as a rational factfinder could have found the elements identified by the construction—here, that the crime involved torture or physical abuse. In this case, Judge Cannon found the necessary facts to indicate that the crime involved torture or physical abuse. We therefore find no error in the use

of the "especially heinous, atrocious, or cruel" aggravating circumstance.

## H.

Petitioner next alleges that the prosecution failed to disclose an inducement made to one of its witnesses, Ms. Anderson. Ms. Anderson testified that, among other things, that petitioner suggested that he and Mr. Ake return to Oklahoma to kill the Douglass children. Petitioner contends that the prosecution struck a deal with Ms. Anderson and that, if the deal had been disclosed, petitioner would have been able to impeach her testimony more effectively.

If a defendant requests evidence from the government, the prosecution's suppression of that evidence "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court held that the due process protection announced in *Brady* includes evidence that undermines the credibility of the prosecution's witnesses. *Id.* at 154, 92 S.Ct. at 766; *see also United States v. Wright,* 43 F.3d 491, 495 (10th Cir.1994). To show a *Brady* or *Giglio* violation, the petitioner must establish "1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." *United States v. Hughes,* 33 F.3d 1248, 1251 (10th Cir.1994); *see also Smith v. Secretary of New Mexico Dep't of Corrections,* 50 F.3d 801, 824 (10th Cir.1995).

"In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim." *Wiggins v. Lockhart,* 825 F.2d 1237, 1238 (8th Cir.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); *see also Andrews,* 802 F.2d at 1266 ("A habeas petitioner must provide supporting factual allegations."). Here, petitioner has not alleged any facts showing that the prosecution

suppressed evidence.[17] Ms. Anderson testified at the sentencing hearing that Texas authorities had dropped charges in Texas in exchange for her testifying in Texas and Oklahoma. There is nothing in the record showing that any of the Oklahoma authorities had knowledge of this agreement. Moreover, Ms. Anderson testified that she was never charged with any crime in Oklahoma and never made any deal with Oklahoma officials.[18] As a result, petitioner has not alleged facts showing a constitutional violation.

## I.

As noted earlier, the Oklahoma Court of Criminal Appeals originally remanded petitioner's case because the trial court did not make a finding with respect to petitioner's individual culpability. *See Hatch I,* 662 P.2d at 1383. Petitioner now claims that Judge Cannon erred at petitioner's third sentencing hearing in finding that petitioner had the requisite intent mandated by *Enmund.*

The Eighth Amendment prohibits the imposition of the death penalty on a person "who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Enmund,* 458 U.S. at 797, 102 S.Ct. at 3376. The Supreme Court has subsequently refined its holding in *Enmund* by clarifying that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." *Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987).

On federal habeas review of a state court's disposition of this issue, however, our review is circumscribed:

[T]he court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made. If it has, the finding must be presumed correct by virtue of 28 U.S.C. § 2254(d), and unless the habeas petitioner can bear the heavy burden of overcoming the presumption, the court is obliged to hold that the Eighth Amendment as interpreted in *Enmund* is not offended by the death sentence.

*Cabana,* 474 U.S. at 387–88, 106 S.Ct. at 697–98 (footnote and citation omitted); *see also Hopkinson,* 866 F.2d at 1215 (quoting the same).

Here, Judge Cannon clearly found that Hatch met the *Enmund* culpability requirements. He based his ruling on, among other facts, the following: Petitioner participated in tying and gagging the Douglasses (or, in Judge Cannon's words, "prepared them for execution"); petitioner threatened to shoot Brooks Douglass; and petitioner attempted to rape Leslie Douglass and stated that he would shoot her if she did not cooperate.

Petitioner responds, however, that we should not apply section 2254(d)'s presumption of correctness to this case. Repeating complaints discussed elsewhere in this opinion, petitioner claims that three exceptions listed in section 2254(d) apply in this case: (1) "that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing," 28 U.S.C. § 2254(d)(2); (2) "that the material facts were not adequately developed at the State court hearing," *id.* § 2254(d)(3); and (3) "that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding," *id.* § 2254(d)(6). Petitioner contends these exceptions apply because Judge Cannon did not allow the psychiatrist to give his opinion on whether Mr. Ake dominated

---

**17.** Unlike the district court, we do not rely on the fact that the defense apparently was aware of a deal between Ms. Anderson and the state of Texas. *Cf. Banks v. Reynolds,* 54 F.3d 1508, 1516-17 (10th Cir.1995) (rejecting the contention that *"Brady* only requires the prosecution to disclose information which is otherwise unknown to the defendant").

**18.** Ms. Anderson and petitioner's counsel shared the following exchange at the third sentencing hearing:

Q: [Did] Oklahoma charge you with concealing the property that's been identified, marked and admitted into evidence that you just identified?

A: No, sir.

Q: You have a deal on that?

A: No, sir, I don't.

petitioner at the time of the murders or whether petitioner possessed the intent to kill, and because Judge Cannon refused to credit the psychiatrist's testimony that petitioner did not have a propensity for violence. We disagree.

Judge Cannon held a full sentencing hearing at which more than twenty witnesses testified. The issue of defendant's individual culpability was explored in depth. We do not believe that defendant did not receive a "full and fair hearing" or that "the material facts were not adequately developed" merely because the judge ruled against petitioner on one evidentiary issue. Although petitioner's expert was not allowed to testify as to his conclusions regarding certain facts, petitioner and the state fully explored the issues underlying an *Enmund* finding.

Because none of section 2254(d)'s exceptions are applicable, the state court ruling is entitled to a presumption of correctness. *Case v. Mondragon,* 887 F.2d 1388, 1392 (10th Cir.1989) ("Explicit and implicit findings by state trial and appellate courts 'shall be presumed to be correct,' 28 U.S.C. § 2254(d), unless one of seven factors listed in section 2254(d) are present."), *cert. denied,* 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). To rebut this presumption, a petitioner must show that "the state court's findings lacked even 'fair support' in the record." *Lonberger,* 459 U.S. at 432, 103 S.Ct. at 849–50. Petitioner has failed to do so here. We therefore conclude that the state court's findings with regard to petitioner's personal culpability met the constitutional requirements articulated in *Enmund.*

## J.

Petitioner next contends that Judge Cannon wrongly based petitioner's death sentence on the acts of his codefendant, Mr. Ake. Petitioner bases this contention on Justice Brennan's dissenting opinion in *Tison v. Arizona,* 481 U.S. at 137, 107 S.Ct. at 1676–77. In that opinion, Justice Brennan stated that he believed the Eighth Amendment forbids "attribut[ing] to [a defendant] as an aggravating factor the manner in which other individuals carried out the killings." *Id.* at 160 n. 3, 107 S.Ct. at 1690 n. 3 (Brennan, J., dissenting); *see also Hopkinson,* 866 F.2d at 1214 n. 19 (quoting Justice Brennan's dissent in *Tison* ).

Assuming *arguendo* that the Constitution forbids a sentencing judge from considering the manner in which a defendant's accomplice carried out the murders, petitioner's contention must fail. The record clearly indicates that Judge Cannon based his findings for petitioner's sentence on petitioner's actions, not Mr. Ake's. In analyzing the "especially heinous, atrocious, and cruel" aggravator, Judge Cannon emphasized that the victims were tied up and gagged; it was petitioner who tied and gagged them. Judge Cannon also found that the victims were subjected to mental torture because the other family members listened while both petitioner and Mr. Ake attempted to rape the Douglasses' twelve-year-old daughter, Leslie. Consequently, looking at the record as a whole, we find that Judge Cannon based petitioner's sentence on petitioner's own actions, not Mr. Ake's.

## VI. THE LACK OF AN EVIDENTIARY HEARING

Finally, petitioner alleges that the federal district court erred by not conducting an evidentiary hearing on any of the above claims. To be entitled to an evidentiary hearing on claims raised in a habeas petition, the petitioner must "allege[ ] facts which, if proved, would entitle him to relief." *Townsend,* 372 U.S. at 312, 83 S.Ct. at 757; *see also Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1536 (10th Cir.1994) (holding that the petitioner must introduce facts "material to the issue in question"); *Rodriguez v. New Mexico,* 12 F.3d 175, 176 (10th Cir.1993) (per curiam).[19] And, as we noted earlier, the allegations must be specific and particularized, not general or conclusory. *See Andrews,* 802 F.2d at 1266.

---

**19.** Once a petitioner has met this burden, she must still show that she "did not receive a full and fair evidentiary hearing in a state court either at the time of the trial or in a collateral proceeding." *Townsend,* 372 U.S. at 312, 83 S.Ct. at 757; *see also* 28 U.S.C. § 2254(d)(1); *Church v. Sullivan,* 942 F.2d 1501, 1510 (10th Cir.1991).

In this opinion, we have thoroughly reviewed every claim that petitioner raised in his habeas petition. We agree with the district court that petitioner has not put forth any specific allegations of error in his state judicial proceedings that, if true, would entitle him to relief. We therefore conclude that the district court did not err in refusing to hold an evidentiary hearing.

## VII. CONCLUSION

A federal court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." *Burger v. Kemp,* 483 U.S. 776, 785, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987). Having undertaken that exacting search, we find no constitutional error. Accordingly, the decision of the district court is AFFIRMED.

EBEL, Circuit Judge, dissenting.

I agree with much of the majority's comprehensive and thoughtful opinion, and concur in its denial of most of Hatch's numerous claims. I further agree that we should limit our review to issues presented by the innocence/guilt phase of Hatch's trial, his appeal, and his third sentencing hearing, because any errors from Hatch's earlier sentencing hearings were nullified by the third sentencing hearing, from which his death sentence resulted. However, I dissent to express my disagreement with the majority's treatment of two of Hatch's claims. In particular, I would grant Hatch relief on (1) his due process claim based on his right to a state court appeal from the death sentence issued at the third sentencing hearing; and (2) his ex post facto claim based on Oklahoma's retroactive repeal of the statutory right to proportionality review of death sentences.

## I. *RIGHT TO A STATE COURT APPEAL*

When Hatch appealed his third death sentence to the Oklahoma Court of Criminal Appeals, the court refused to consider ten of Hatch's twelve claims of error. *Hatch v. State,* 835 P.2d 880, 883 (Okla.Crim.App. 1992) (*Hatch III* ).[1] The court reasoned that those ten issues went beyond the scope of the remand it had previously ordered after Hatch's earlier appeal in *Hatch v. State,* 662 P.2d 1377 (Okla.Crim.App.1983) (*Hatch I* ). However, when Hatch had previously sought appellate review by the Oklahoma Court of Criminal Appeals after his first death sentence, the court refused to consider several of Hatch's claims of error because it was remanding the case for further proceedings. *Id.* at 1379 n. 1. Thus, Hatch has never received appellate review of the ten claims of error he asserted following his third sentencing trial, which we have held was the operative penalty proceeding. This appellate refusal to consider Hatch's claims that Oklahoma imposed his death sentence in error, I believe, violated Hatch's constitutional rights.

I am less certain than is the majority regarding whether criminal defendants sentenced to death have an independent constitutional right to appeal their death sentences. The majority accurately notes that the Supreme Court has stated that a criminal defendant has no constitutional right to appeal a conviction. *See, e.g., Goeke v. Branch,* — U.S. —, —, 115 S.Ct. 1275, 1278, 131 L.Ed.2d 152 (1995); *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038–39, 52 L.Ed.2d 651 (1977). However, the Court has never so stated in the context of the death penalty. To the contrary, it has underscored

---

1. As noted in the majority opinion, the court refused to review Hatch's claims that: (1) Oklahoma's retroactive revocation of two statutory provisions governing the review of death sentences violated the Ex Post Facto Clause; (2) the "especially heinous, atrocious, or cruel" aggravator was unconstitutionally vague and overbroad; (3) his actions were not probative of whether he was a continuing threat to society; (4) Judge Cannon unconstitutionally attributed Ake's acts to Hatch; (5) the bill of particulars did not satisfy state notice provisions; (6) the bill of particulars did not provide notice of the use of evidence of

other crimes; (7) his sentence was unconstitutionally disproportionate to Ake's sentence; (8) he was denied his right to be sentenced by a jury; (9) Judge Cannon unconstitutionally considered unadjudicated offenses; and (10) his death sentence was against the weight of the evidence. The court did consider Hatch's claims that (1) the use of a witness' past recollection recorded violated his Confrontation Clause rights; and (2) the refusal to admit the expert opinions of the defense psychiatrist that Hatch had no intent to kill and was dominated by Ake violated his right to put on an effective defense.

that meaningful appellate review is an important safeguard in a state's death penalty scheme that helps prevent the random or arbitrary imposition of the death sentence in violation of the Eighth and Fourteenth Amendments. *See, e.g., Pulley v. Harris,* 465 U.S. 37, 45, 104 S.Ct. 871, 876–77, 79 L.Ed.2d 29 (1984); *Zant v. Stephens,* 462 U.S. 862, 890, 103 S.Ct. 2733, 2749–50, 77 L.Ed.2d 235 (1983); *Gregg v. Georgia,* 428 U.S. 153, 195, 206, 96 S.Ct. 2909, 2935–36, 2940–41, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). Thus, although the Court has not explicitly held that the right to appeal a death sentence is constitutionally required, I expect that if a state ever tried to deny a right of appeal to a defendant sentenced to death that the Supreme Court would conclude that the Constitution requires some form of meaningful appellate review of such cases. As to the ten issues that Hatch seeks to raise, the state of Oklahoma has effectively denied him any appeal at all. I believe that denial violates Hatch's Eighth and Fourteenth Amendment rights.

However, even if there is no independent constitutional right to direct appeal of a death sentence, I believe Hatch was deprived of a state-created right to appeal in contravention of the Due Process Clause. As the majority recognizes, when a state creates a right to appeal, it must comply with the constitutional requirements of due process if it then seeks to deprive a defendant of that right. Here, Oklahoma provides that defendants have a statutory right to appeal adverse judgments to the Oklahoma Court of Criminal Appeals. Okla.Stat.Ann. tit. 22 § 1051(a). In the case of the death penalty, appellate review is mandatory. *Id.* at tit. 21 § 701.13(A) ("Whenever the death penalty is imposed, ... the sentence *shall be reviewed* on the record by the Oklahoma Court of Criminal Appeals.") (emphasis added). Nevertheless, Oklahoma appears to have deprived Hatch of his statutory right to an appeal without justification by refusing to hear ten of his twelve claims of error. Such an arbitrary deprivation of a state-created liberty interest does not comport with due process.

The majority reaches a contrary conclusion because it holds that Hatch received a state court appeal when the Oklahoma Court of Criminal Appeals reviewed two of the twelve claims that he appealed. The majority characterizes Hatch's claim as a claim that he did not receive an "adequate" appeal, and it concludes that Oklahoma law does not provide for any such right because it grants broad discretion to the Oklahoma Court of Criminal Appeals in the exercise of its appellate powers. I disagree because Oklahoma has curtailed the discretion of the Oklahoma Court of Criminal Appeals in the context of the death penalty, and because whatever discretion remains must still be exercised in conformity with due process norms. *Cf. United States v. Cronic,* 466 U.S. 648, 654–55, 104 S.Ct. 2039, 2043–45, 80 L.Ed.2d 657 (1984) (explaining that providing inadequate counsel is tantamount to providing no counsel at all); *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963) (stating that granting an indigent defendant a right to appeal without providing them counsel renders the appeal a "meaningless ritual").

First, the broad discretion accorded to the Court of Criminal Appeals to exercise its appellate power cited by the majority is inapplicable to the review of death sentences. Okla.Stat.Ann. tit. 21 § 701.13(A) mandates that the Court of Criminal Appeals "shall review" death sentences. That legislative mandate would be eviscerated if the court could nominally take an appeal but arbitrarily decline to review claims of error. Although the court "has the authority to determine, in a criminal matter, when it has the power to proceed," *Duvall v. State,* 871 P.2d 1386, 1388 (Okla.Crim.App.1994), its determinations must be made according to statutory parameters. In the present action, the Court of Criminal Appeals' refusal to consider substantial portions of Hatch's appeal was not based on any reasoned interpretation of its statutory authority. Rather, the court simply failed to fulfil Oklahoma's statutory mandate to review death sentences.

Moreover, even if Oklahoma law provided the Court of Criminal Appeals with complete discretion to consider appeals, an exercise of discretion in an arbitrary manner would vio-

late constitutional due process requirements. As the Supreme Court stated in *Evitts v. Lucey*, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." 469 U.S. 387, 401, 105 S.Ct. 830, 839, 83 L.Ed.2d 821 (1985); *see also id.* at 400–01, 105 S.Ct. at 838–39 ("The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms."). Although Oklahoma can establish reasonable procedures to govern death penalty appeals, the ad hoc refusal even to consider substantial portions of Hatch's appeal constitutes the type of action that strikes at the core of the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.") (citation omitted). In granting Hatch's claim, we would not be second-guessing the adequacy of the Court of Criminal Appeals' substantive treatment of an issue of state law; rather we would only be preventing the court from acting in a seemingly arbitrary manner in refusing even to consider certain of the claims raised on appeal.

Whether Hatch's right to an appeal is rooted in the Constitution itself or in state law as safeguarded by the Due Process Clause, federal habeas review is not an adequate substitute for direct review by Oklahoma's courts. Most importantly, federal habeas courts cannot review Hatch's state law claims. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991). Moreover, even as to Hatch's federal claims, we must entitle any underlying state court factual findings to a presumption of correct-

ness. 28 U.S.C. § 2254(d); *Lujan v. Tansy*, 2 F.3d 1031, 1034 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1074, 127 L.Ed.2d 392 (1994). Accordingly, I believe Hatch's death sentence cannot stand unless he is given his right to a state court appeal.

## II. *EX POST FACTO CLAUSE*

The majority acknowledges that Oklahoma retroactively applied to Hatch its repeal of the statutory requirement that the Oklahoma Court of Criminal Appeals review every sentence of death to assess whether it is excessive or disproportionate to the penalty imposed in similar cases. Nevertheless, the majority concludes that the retroactive application of the repeal did not violate the Ex Post Facto Clause because the change merely altered the "procedures" by which Hatch's case was adjudicated, and did not change the substantive criminal law establishing Hatch's punishment. I disagree because I believe that the repeal effectively increased the punishment to which Hatch was exposed after the commission of his crime.

Increasing punishment for a crime after its commission remains a core prohibition of the Ex Post Facto Clause. *Collins v. Youngblood*, 497 U.S. 37, 41–42, 110 S.Ct. 2715, 2718–19, 111 L.Ed.2d 30 (1990) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390–92, 1 L.Ed. 648 (1798)). In the instant action, when Hatch committed his crime, Okla.Stat. Ann. tit. 21 § 701.13(C)(3) capped his punishment at the proportionate sentences of similarly situated defendants. That maximum punishment likely would have been a life sentence, given that Hatch's codefendant Ake was only given life despite being the triggerman and arguably orchestrating the crime.[2] However, the limit on the punishment that Hatch could receive was removed when Oklahoma repealed the statutory right to propor-

---

**2.** Although a defendant's sentence is not necessarily limited by the sentence given a codefendant under Oklahoma's interpretation of Okla. Stat.Ann. tit. 21 § 701.13(C)(3), it remains a relevant and important point of comparison in assessing the proportionality of a death sentence. *See Brogie v. State*, 695 P.2d 538, 547 (Okla.Crim. App.1985); *Smith v. State*, 659 P.2d 330, 337 (Okla.Crim.App.), *vacated on other grounds*, 464 U.S. 924, 104 S.Ct. 324, 78 L.Ed.2d 297 (1983). Here, Ake was originally sentenced to death, but

a jury subsequently sentenced him to life after the first sentence was overturned by the United States Supreme Court in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The life sentence was affirmed by the Oklahoma Court of Criminal Appeals in 1989, *Ake v. State*, 778 P.2d 460 (Okla.Crim.App.1989), roughly three years before the Oklahoma Court of Criminal Appeals reviewed Hatch's ultimate death sentence.

tionality review of death sentences. Such a statutory change violates the Ex Post Facto Clause because it "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales,* —— U.S. ——, ——, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995).

The majority disagrees because "[t]he penalty for first degree murder, both before and after the legislature changed section 701.13(C)(3), was death." Thus, the majority characterizes the statutory repeal as a mere procedural change. However, such an abstraction of Oklahoma's criminal law elevates form over substance and ignores the realities that Hatch's risk of receiving the death penalty was substantially increased when he lost the right to have his sentence reviewed for proportionality against his partner in the crime, who received only a life sentence. We, like a legislature, cannot immunize a retroactive statutory change from ex post facto scrutiny merely by labeling it "procedural." *See Collins,* 497 U.S. at 46, 110 S.Ct. at 2721. While there is no clear line dividing "procedural" and "substantive" statutory changes, *Morales,* —— U.S. at ——, 115 S.Ct. at 1603, we must evaluate whether a given change exposed a defendant to the risk of greater punishment, *id.* at ——, 115 S.Ct. at 1603; *Miller v. Florida,* 482 U.S. 423, 432, 107 S.Ct. 2446, 2452, 96 L.Ed.2d 351 (1987) (emphasizing that disadvantaging defendants by depriving them of an "opportunity" to receive a lesser sentence implicates ex post facto concerns).[3] Here, Hatch was not exposed merely to some theoretical risk of greater punishment, but actually received a sentence he likely would not have received under the criminal law in place at the time he committed his crime had his sentence been subject to a proportionality review. Accordingly, the Ex Post Facto Clause and the Constitution cannot countenance his death sentence unless he is given the proportionali-

ty review to which he was statutorily due under the laws of Oklahoma.

### III. *CONCLUSION*

For the foregoing reasons, I would conditionally grant Hatch's petition for a writ of habeas corpus and vacate his death sentence, unless the Oklahoma Court of Criminal Appeals within ninety days accords Hatch his rights to (1) appellate review of those claims the court earlier refused to consider; and (2) proportionality review of his sentence under the now repealed Okla.Stat.Ann. tit. 21 § 701.13(C)(3).

---

**3.** This principle has been recognized by several of our sister circuits, who have held after *Collins* that changes in "procedures" which in effect impact the legal consequences of a given act implicate ex post facto concerns. *See, e.g., U.S. v. Bell,* 991 F.2d 1445, 1448–49 (8th Cir.1993); *Helton v. Fauver,* 930 F.2d 1040, 1045 n. 8 (3d

Cir.1991). Such a rule comports with our continued emphasis post-*Collins* on whether a change in the law disadvantages a defendant. *See United States v. Gerber,* 24 F.3d 93, 96 (10th Cir.1994); *Arnold v. Cody,* 951 F.2d 280, 281 (10th Cir.1991).